## Ira S. Powell, Appellant, v. Robert W. Huey, Appellee.

1. APPEALS AND ERRORS—*when finding of chancellor not disturbed as against the evidence.*  Where a chancery cause is heard in open court on oral testimony and the evidence is conflicting, the finding of the chancellor will not be reversed unless error is palpable.

2. SPECIFIC PERFORMANCE—*when awarded; when not.*  The specific performance of a contract will only be enforced where the terms are clear, certain and unambiguous, either admitted by the pleadings or proven with a reasonable degree of certainty by the evidence.  Even in cases where all of these requirements are present, specific performance is not a matter of right, but rests in the sound discretion of the court, to be determined from all the facts and circumstances of the particular case.

3. FORECLOSURE—*what does not bar relief.*  A bill of foreclosure, although it does not show the real consideration for or the precise amount due upon a mortgage, will authorize a decree, although the proofs may show a less sum to be due than was claimed, or a state of facts not averred in it, if these facts are not incompatible with the allegations in the bill.

4. MORTGAGE—*when matures prior to express date of maturity.*  A mortgage given for purposes of indemnity matures when the person indemnified is required to meet the principal debt, such maturity taking effect to the extent of the obligation paid by the person indemnified, regardless of the date of maturity named in the mortgage.

Foreclosure.  Appeal from the Circuit Court of Hancock county; the Hon. JOHN A. GRAY, Judge, presiding.  Heard in this court at the May term, 1908.  Affirmed.  Opinion filed December 23, 1908.   ·

**Statement by the Court.**  This is an appeal from a decree of the Circuit Court foreclosing a mortgage

given by appellants, William A. Powell and Martha M. Powell, to appellee.

Two suits in equity and one at law involving the same series of transactions, but distinct as to the relief sought, were tried together by the circuit court without a jury upon the same evidence, with the agreement of counsel that separate judgments or decrees should be rendered, and that in the decision of each cause such part only of the evidence as was applicable to that particular cause should be considered. Separate appeals from the judgment and decrees rendered were perfected. Although not consolidated the same will be considered together.

The litigation grew out of the following state of facts: On September 24, 1903, for the purpose of indemnifying Robert W. Huey against liability as surety upon a note for $800 given by William A. Powell to one Talbot and due August 18, 1904, and any further suretyship liability that might thereafter be incurred by him for the benefit of said Powell, William A. Powell and Martha M. Powell, his wife, executed a mortgage to said Huey upon two tracts of real estate owned by Powell one of which was known as the "home place" and the other as the "Coke farm." The mortgage upon its face purported to secure the payment of a promissory note for $7,000 signed by the mortgagors and due September 24, 1908: also 5 interest notes for $350 each, of even date with the mortgage, due in one, two, three, four and five years respectively. The mortgage provided in substance that if default was made in the payment of the principal sum or the interest thereon as it became due, then the principal note and all accrued interest and all indebtedness secured thereby should at once, at the option of the mortgagee, become due and payable, and the mortgage might at once be foreclosed. The mortgage further provided that the same was given subject to a prior mortgage to one Brown, to secure the payment of a note of William A. Powell for $12,000 due September 24, 1908.

Thereafter and prior to September 13, 1905, Powell and his wife conveyed the premises in question to their son, Ira S. Powell.  On that day a written agreement was entered into by and between said parties, as follows, to-wit:

"MACOMB, ILL., Sept. 13, 1905.

"This is to certify that William A. Powell and Martha M. Powell have given Robert W. Huey a note and mortgage of $7,000.00, dated September 24, 1903, to be held by said Robert W. Huey as security on notes given to him by Ira S. Powell and William A. Powell, and also for notes endorsed or signed by him with Ira S. Powell and William A. Powell.  It is agreed that when all the notes owed by W. A. or Ira S. Powell or both of them to Robert W. Huey, and also the notes endorsed or signed by Robert W. Huey with Ira S. and W. A. Powell, are paid and canceled, then this mortgage and note are to be delivered to Ira S. Powell.

R. W. HUEY,
I. S. POWELL,
W. A. POWELL."

At the same time Huey executed his note to the Union National Bank of Macomb for $5,000, due September 13, 1906, with interest at 6% for the benefit of Ira S. Powell and William A. Powell, who in turn and in consideration thereof executed their joint note to Huey for $5,000, due September 13, 1906.

Afterward, on August 4, 1906, Huey became surety for Ira S. Powell upon his note for $4,541.37, payable to the Hancock County National Bank, and due November 4, 1906, which said note was given in renewal of a prior loan, the proceeds of which were received by William A. Powell.  On September 10, 1906, a written contract was prepared which was signed by Huey in person, and purported to be signed by William A. Powell as agent for Ira S. Powell, by the terms of which Huey agreed to purchase the "Coke farm," consisting of 150 acres, for the sum of $18,750, the taxes of 1906 to be paid by Powell, and possession of the premises given September 24, 1906.  It further

provided that as part of the purchase price Huey was to assume Powell's note for $4,541 to the Hancock County National Bank and that he should pay the balance in cash on or before September 24, 1906, upon receipt of a deed for the premises.

There is evidence tending to show that it was verbally agreed by the parties that in payment of the remainder of the purchase price Huey was to assume and pay the Talbot note and interest amounting to $848, and to cancel the $5,000 note representing the note of Huey to the Union National Bank and upon which there was $300 accrued interest due, and to assume the indebtedness to Brown to the extent of the balance; the remainder of said Brown mortgage indebtedness to be carried by Powell upon the "home place." On September 12, 1906, Ira S. Powell signed the said contract in person, thus ratifying the same. On September 24, 1906, Huey repudiated the alleged contract, claiming that his signature thereto had been procured by fraud and circumvention, whereupon Powell formally tendered a deed to him in accordance with said contract which he refused to accept. On October 6, 1906, Huey instituted an action in assumpsit against William A. and Ira S. Powell upon their $5,000 note to him bearing date September 13, 1905, and on January 21, 1907, filed a bill to foreclose the mortgage given to him as aforesaid, purporting to secure the payment of a note for $7,000. By his bill he alleged an absolute indebtedness upon the notes described in the mortgage. William A. Powell, Martha M. Powell and Ira S. Powell, who were made defendants to the bill, by their answer set up that there was no consideration for the giving of said mortgage; that the same was given to indemnify Huey against any loss he might sustain as surety for William A. Powell and for no other consideration or purpose; that Huey had not sustained any loss on said account, and that all of said notes were theretofore fully paid. On March 2, 1907, Ira S. Powell filed a bill against Huey praying specific

performance of the contract of sale in question. Huey answered the bill denying the payment of the note for $4,541, which the bill averred had been made on account of said contract; denied that a deed was tendered, and asserted that the payment of said note for $4,541 was made as surety for Powell, and that he, Huey, had paid divers other notes as surety for Powell, greatly in excess of $7,000 and the interest thereon, and that said mortgage was a valid lien on the premises. Upon the hearing of all of said cases together, the court dismissed the bill for specific performance, rendered a decree of foreclosure and sale against the premises included in said mortgage, for the sum of $8,483.61, and rendered judgment in favor of the plaintiff in the action of assumpsit for the sum of $2,424. From said decrees and judgment appeals are prosecuted by the unsuccessful parties, the present appeal being from the foreclosure decree in question.

DAVID E. MACK, WILLIAM H. HARTZELL, JOHN W. WILLIAMS and JOHN D. MILLER, for appellants.

CHARLES J. SCOFIELD and APOLLOS W. O'HARRA, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

Although the evidence relative to the execution of the alleged contract sought to be enforced is in close conflict, we are of opinion that the testimony of appellee and S. H. Ferris was sufficient to warrant the chancellor in finding that the same was not knowingly executed by Huey, but that he understood he was signing an application for a loan upon his farm and the Coke farm, in case he decided to take the land, and that he was induced to sign the same through trickery and device practiced by William A. Powell. Furthermore there is evidence tending to prove that the terms thereof were so unconscionable and inequitable as to

justify the chancellor in refusing to enforce the same. The Coke farm was valued in the alleged contract at $125 an acre, while the evidence tends to show that it was worth not to exceed $80 per acre.

Where a chancery case is heard in open court on oral testimony and the evidence is conflicting, the findings of the chancellor will not be reversed unless error is palpable.    Dyas v. Dyas, 231 Ill. 367.

''A specific performance of contract will only be enforced where the terms are clear, certain and unambiguous, either admitted by the pleadings or proven with a reasonable degree of certainty by the evidence. Even in cases where all of these requirements are present, specific performance is not a matter of right, but rests in the sound discretion of the court, to be determined from all the facts and circumstances of the particular case.  Specific performance is an equitable remedy which compels such substantial performance of the contract as will do justice between the parties. Inflexible rules cannot be laid down for the exercise of the power of a court of equity in granting specific performance.    Every  case  of  specific  performance necessarily depends in a large degree upon its own special circumstances.  In such proceedings the inquiry must be whether in equity and good conscience the court should specifically enforce the contract, and the decision involves the hearing of evidence of extrinsic facts.  It is never decreed as a matter of course, even when a legal contract is shown to exist.

''If then the contract itself is unfair, onesided, unjust, unconscionable, or affected by any other inequitable feature; or if its enforcement would be oppressive or hard on the defendant, or would prevent his enjoyment of his own right, or would work any injustice; or if the plaintiff has obtained it by sharp and unscrupulous practices, by over-reaching, by trickery, by taking undue advantage of his position, by non-disclosure of material facts, or by any other unconscientious means, then a specific performance will be

refused. It necessarily follows that a less strong case is sufficient to defeat a suit for a specific performance than is requisite to obtain the remedy." Sugar v. Froehlich, 229 Ill. 297, and cases cited.

Without extending this opinion by further detailing or discussing the evidence contained in the record, we are impelled to hold that the chancellor did not err in dismissing the bill for specific performance.

It is urged as ground for the reversal of the decree of foreclosure that there is a variance between the allegations of the bill and the evidence; that the bill being in the ordinary form of bills to foreclose, does not correspond with the proofs, which show that the mortgage and notes were given for the purpose only of indemnifying Huey against any loss or damage by reason of his having signed a note or notes as surety for William A. Powell.

"A bill of foreclosure, although it does not show the real consideration for or the precise amount due upon a mortgage, will authorize a decree, although the proofs may show a less sum to be due than was claimed, or a state of facts not averred in it, if these facts are not incompatible with the allegations in the bill." Collins v. Carlile, 13 Ill. 254.

It is also insisted that the mortgage which it is sought by the bill to foreclose was not due at the time the bill was filed, nor at the time of the entry of the decree of foreclosure; that notwithstanding the interest notes had matured, the mortgage having been given for the purpose of collateral security, did not mature until September 24, 1908.

By the express terms thereof, the interest notes payable on September 21, 1904, 1905, and 1906, respectively, were past due on January 21, 1907, upon which date the bill was filed. Appellee therefore had the right to exercise his option under the terms of the mortgage and declare the principal sum also due. If the mortgage be treated as one of indemnity only, as we think it should, and its literal effect disregarded,

it is obvious that when the mortgagee was compelled to pay any part of the indebtedness against which he was indemnified, the real mortgage indebtedness may be properly held to have, to that extent, matured, without regard to its express terms.

The evidence shows that prior to the time the bill to foreclose was filed, appellee was compelled to pay the Talbot note of $800 upon which he was surety for William A. Powell; that on September 25, 1905, he paid the sum of $2,884.90 on account of the note given by him to the Union National Bank as collateral to the note of William A. and Ira S. Powell upon which there was then due with interest the sum of $5,310; the balance due being the basis of recovery in the assumpsit suit hereinbefore referred to, and that he on November 2, 1906, paid the note to Ira S. Powell for $4,541.27 to the Hancock County National Bank upon which he was also surety. It follows that under either theory, the bill to foreclose was not prematurely filed as contended by appellants. The aggregate of said payments represents the amount for which the decree was rendered.

There is no merit in the contention that the note of Ira S. Powell to the Hancock County National Bank should not be held to be covered by the indemnity. The evidence shows that William A. Powell received the proceeds thereof and in such case it can be properly held that he is equitably liable therefor.

Under the foregoing views there was no valid defense to the assumpsit suit and the judgment therein entered for the balance due appellee on account of his payment of the Union National Bank note was proper.

The decree of foreclosure was warranted and is affirmed.

*Affirmed.*