JOSEPH DYAS *et al.* Appellants, *vs.* CHARLES D. C. DYAS *et al.* Appellees.

*Opinion filed December 17, 1907.*

1. APPEALS AND ERRORS—*chancellor's findings of fact will stand, on appeal, unless clearly wrong.* The chancellor's findings of fact from conflicting oral testimony heard in open court must be upheld, on appeal, unless they are against the preponderance of the evidence.

2. SAME—*question not raised in the Appellate Court will not be considered in Supreme Court.* The Supreme Court will not consider the points that a contract lacks mutuality and is without consideration as to certain parties, where it appears from the certified copy of the brief filed in the Appellate Court that such points were not presented in that court.

3. INTERPLEADER—*bill of interpleader does not admit of a general accounting.* The question for determination upon bill of interpleader is the ownership of the identical property brought into court, and it is not the province of the court to permit a general accounting between the defendants and decree the payment of the balance found due out of the money so brought into court, which is, in fact, the property of the debtor, in the absence of any equitable claim thereon in favor of the creditors. (*Newhall* v. *Kastens,* 70 Ill. 156, explained.)

4. SAME—*when court cannot determine question of indebtedness upon interpleader.* Where a father, mother and son agree, by contract, that a certain amount of the proceeds of the sale of a farm in which each had invested some money should be paid to the son as his share, any equitable lien which the mother may have previously had upon the son's interest in the land by reason of advancements of money to make payments, for interest on the encumbrance or for improvements is waived by the contract, and upon interpleader by a bank holding part of the proceeds of the sale the question whether the son is indebted to his mother by reason of such advancements cannot be determined.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Pike county; the Hon. Harry Higbee, Judge, presiding.

This is an appeal by Joseph Dyas and Mary A. Dyas from a judgment of the Appellate Court for the Third District affirming a decree entered in a proceeding begun by a bill of interpleader filed in the circuit court of Pike county by Mattinson, Wilson & Co., a banking firm, against appellants and Charles D. C. Dyas.

The following statement of the facts is taken in large part from the opinion of the Appellate Court:

In December, 1902, appellants, Joseph Dyas and Mary A. Dyas, husband and wife, and appellee Charles D. C. Dyas, a son of appellants, purchased a farm in Pike county, Illinois, for $20,800, which consideration was contributed by the respective parties and made up as follows: Joseph Dyas, $8000, consisting of a hotel property at Sandwich, Illinois; Charles D. C. Dyas, $5000 in cash; Mary A. Dyas, $2000 in cash, (of which amount $1350 was contributed on December 6, 1902, and $650 at a later date before the transaction was finally consummated,) the assumption of the mortgage on the premises for $4500, and a note for $1300 payable to one McGown. The title to the farm was taken in the names of Joseph Dyas and Charles D. C. Dyas. It is not controverted that it was understood and agreed at the time the farm was purchased either that the interest of Mary A. Dyas therein should be two-sevenths of the one-half owned by Charles, or that he should give to his mother a bond or mortgage or some instrument in writing securing the $2000 advanced by her. On December 6, 1902, when she paid him the $1350, he gave her an instrument in writing reading as follows, to-wit:

"Sandwich, Illinois, *December 6, 1902.*

"Thirty days after date I promise to pay to Mary A. Dyas the sum of $1350.00 in contract on farm.      Charles D. C. Dyas."

In December, 1905, one Ream, a real estate agent in Missouri, negotiated a sale of the farm to O. H. Damon, of Gibson City, Illinois, whereby the owners were to realize $20,800, less the agent's commission of $1040, as follows: $7260 in cash; one note for $6700, dated December 12, 1905, payable to Joseph and Charles D. C. Dyas, on or before March 1, 1906, at the bank of Mattinson, Wilson & Co., Gibson City, Illinois, the purchaser assuming the payment of a mortgage on the premises for $4500 and the note for $1300 payable to McGown. While the negotiations for a sale of the farm were pending, Charles D. C. Dyas, accompanied by Ream, went to the house of appellants, in Sandwich, Illinois, for the purpose of inducing them to sell the farm and arrange for a division of the proceeds. On that occasion, after some controversy between the parties, the terms of the sale to Damon were agreed upon as above stated, and Ream drew up an instrument which was signed by them, as follows:

"SANDWICH, ILL., *11-8, 1905.*

"This agreement entered into this day by and between Chas. D. C. Dyas of the first part and Joseph Dyas and Mary A. Dyas, his wife, of the second part, agree to give to Chas. D. C. Dyas 6300 and all of the corn crop of 1905 and all the stock and tools on the farm now owned and known as the Joseph and Chas. D. C. Dyas farm, situated in Pike county, Levee township and State of Illinois.

"Witness our hands and seals this day and date above written, signed in the presence of I. J. Ream.

CHAS. D. DYAS,
MARY A. DYAS,
JOSEPH DYAS."

Upon the face of the instrument, and below the signatures, the word "over" is written, and on the back thereof appears the following: "One noat of $6700 due March first, 1906, without interest 7260 dollars in cash and of this amount, 6300 in cash goes to Chas. D. C. Dyas when deed is delivered to Mattinson, & Wilson Bank at Gibson City, Ill., which is mutaley agreed upon by all concerned."

The cash payment of $7260 was received by Joseph Dyas, and thereafter the note for $6700 was paid by Damon to Mattinson, Wilson & Co., bankers at Gibson City. Thereupon Mattinson, Wilson & Co. filed their bill of interpleader, alleging the payment to them of said sum of $6700; that said money was claimed by appellants, Joseph and Mary A. Dyas, and by Charles D. C. Dyas, and that each of said parties had notified the complainants of their respective claims and threatened suit to recover the same.

The appellants and Charles D. C. Dyas having been made parties defendant to the bill of interpleader filed their respective answers thereto. The answer of Joseph Dyas admits the receipt by him of $7260, being $280 in excess of one-half of the purchase price of the farm. His answer further asserts the right of Mary A. Dyas to $2000 of the proceeds of said farm, and offers to turn over to her the $280 in his hands to apply on her claim. The answer of Mary A. Dyas alleges the payment by her of $2000 upon the purchase price of the farm, the agreement that she was to be secured therefor, and the giving to her by said Charles D. C. Dyas of the note for $1350, heretofore mentioned. The answer of Charles D. C. Dyas sets up the agreement of November 8, 1905, as a final settlement of all matters of difference between the parties as to the division of the proceeds of the farm and as establishing his right to $6300 of said proceeds, and he further insists that this agreement was a final settlement of all matters in controversy between himself and his parents.

It is conceded, and in fact insisted, by all the parties that the bill of interpleader was properly filed.

The decree of the circuit court finds that by virtue of the agreement of November 8, 1905, Joseph and Mary A. Dyas agreed to give Charles D. C. Dyas $6300 out of the purchase price of the farm and all the corn crop of 1905 and all the stock and tools on said farm; that the claim of Mary A. Dyas for moneys advanced by her to Charles D.

C. Dyas cannot, under the pleadings and evidence, be sustained, for the reason, as we understand, that the court did not regard it as a proper subject for adjudication in this suit. It is further ordered that the decree shall be without prejudice to Mary A. Dyas as to her said claims, and that her said claims cannot be adjudicated in the proceeding as they are without equity. The decree dismisses the claim of Mary A. Dyas for want of equity, and directs Mattinson, Wilson & Co. to pay to Charles D. C. Dyas, out of the moneys paid to them by O. H. Damon on his note for $6700, the sum of $6300 and to pay to Mary A. Dyas the balance.

Appellants attack the agreement of November 8, 1905, upon the ground of fraud, alleging that it was signed by them at a time when they were unable, on account of failing sight and darkness, to read the agreement; that the contents of the agreement were misrepresented to them by the agent, Ream; that they relied upon Ream to read the agreement to them and that he fraudulently mis-read the same, or that the agreement was materially and fraudulently altered after the signing. They also contend that the word "over," which appears on the face of the agreement, and the matter which appears on the reverse side of the sheet, were not written upon the instrument when it was signed by them.

The evidence tends to show that upon the occasion when the agreement was signed the son spent several days at the home of his parents, and that during that time there was much controversy regarding certain claims which the son was urging, growing out of transactions covering a long period of years. The claims made by him appear to have related to money due him for services while appellant Joseph Dyas was conducting a hotel, and for money advanced during that period. There was also a claim by the son that his father had appropriated the proceeds of a note for $250 belonging to the former, and a counter-claim by

Joseph Dyas arising out of a transaction regarding certain railroad securities.

The proceeds of the sale available for distribution between the parties here in interest amounted to $13,960. If this amount was divided in accordance with the title as it stood of record, disregarding all other considerations, the father and son, as between themselves, would each be entitled to $6980. While the title stood in the father and son the mother advanced several hundred dollars, which was used in paying interest on the mortgage debt and in making improvements on the farm.

There is evidence tending to show that the proposition to give the son $6300 of the proceeds of the sale, and the corn crop and personal property on the farm, emanated from Mary A. Dyas; that the son insisted that he be paid $7000 in cash in addition to the crop and personal property, and that he accepted the terms embodied in the agreement as being the best obtainable.

Mary A. Dyas did not surrender the written obligation of her son for $1350, but he insists that a novation took place by which Joseph Dyas agreed to pay her the amount due her, and that she accepted her husband in lieu of her son as a debtor but refused to surrender the obligation before she was actually paid.

Appellants make several contentions which will sufficiently appear from the opinion.

MATTHEWS, ANDERSON & MATTHEWS, and ALDRICH & WORCESTER, for appellants.

WILLIAM MUMFORD, for appellee Charles D. C. Dyas.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The principal question in this case is one of fact. The son, Charles D. C. Dyas, contends, and the circuit court found, that the instrument of November 8, 1905, including

the memorandum written on the back thereof, evidences an agreement entered into by the son and his parents, the appellants, providing what amount of the proceeds of the sale of the farm should be paid to the son. On the part of the appellants it is contended that their signatures to the agreement written on the face of this paper were obtained by fraud and circumvention, or that the writing above their signatures was fraudulently and materially altered after their signatures had been attached, and that the writing on the back of the paper was not placed there on the occasion when they attached their signatures, and that no contract was made at that time in reference to the payment to the son of any particular portion of the proceeds arising from the sale of the farm; that the only agreement they made, and the only one they intended to sign, was an agreement in reference to the crop of 1905 and the stock and tools on the farm. We have examined with great care the evidence bearing upon this question. It is very conflicting. The chancellor, however, had the advantage of observing the witnesses as they testified in open court, and we are not able to say that his finding was against the preponderance of the evidence.

It is contended in this court that even if the finding of the circuit court on this question of fact be correct, still the written instrument in question is void as to the mother for the reasons that it lacks mutuality and is without consideration. Upon leave obtained, Charles D. C. Dyas has filed in this court a certified copy of the brief filed by appellants in the Appellate Court, from which it appears that these questions were not presented in that court, and for this reason they will not be considered by us.

It is then said that the circuit court should have determined whether or not the son was still indebted to the mother, and if so, should have decreed the satisfaction of that indebtedness out of the proceeds of the real estate passing to the son. We think this results from a miscon-

ception in reference to the scope of the contest between defendants to a bill of interpleader. In this connection appellants rely principally upon the case of *Newhall* v. *Kastens*, 70 Ill. 156. In that case the owner of a building newly constructed filed a bill of interpleader, or a bill in the nature of a bill of interpleader, against the contractor, a sub-contractor and persons who had furnished materials and performed labor for the latter and who were claiming liens against the property for money due them. The purpose of the bill was to ascertain to whom the owner should pay the fund arising from an unpaid portion of the contract price. The principal question was whether the claims of the parties so performing labor and furnishing materials could be adjudicated in that proceeding, and this court held that as these parties were asserting equitable claims to the fund, the question whether they had claims of that character could properly be determined in the suit even though by the terms of the contract no money was payable by the owner directly to them. The course there indicated as the proper one was followed here, and the circuit court determined that Mrs. Dyas had no equitable claim upon the $6300 decreed to the son. If she ever had any equitable claim upon that money so decreed to the son, she waived and released it by the contract which she entered into on November 8, 1905. In a proceeding of this character the question before the court is, "Who is entitled to the identical property brought into court?" It is not the province of the court in such a proceeding to permit a general accounting between the defendants and decree the payment of the balance found due out of the money so brought into court, which is, in fact, the property of the debtor, in the absence of any equitable claim thereon in favor of the creditor. For example: If the son in this case owed the father $500 for borrowed money, evidenced by an unsecured promissory note, the father could not bring that note into court and obtain a decree that it should be satisfied out of

the proceeds of the sale going to the son. The mother here has no claim against the bank for any part of the $6300, which by the contract is to be paid to the son. Any claim which she has against her son which might otherwise be an equitable charge upon this sum of $6300 ceased so to be when she entered into the contract of November 8, 1905. It follows that it was not the duty of the court to determine whether or not her son was indebted to her. *Sherman* v. *Partridge*, 4 Duer, (N. Y.) 646; *Willson* v. *Salmon*, 45 N. J. Eq. 131; 4 Pomeroy's Eq. Jur. (3d ed.) sec. 1320.

This precise question has not before been determined by this court, but it was considered by the Appellate Court for the First District in the case of *Byers* v. *Commission Co.* 111 Ill. App. 575, where a like conclusion was reached.

It is then insisted that the action of the court in directing the payment to Mrs. Dyas of the money in the hands of the complainant in the bill not claimed by the father or the son is inconsistent with that portion of the decree which directs the payment of the $6300 to the son, for the reason that if the mother had an interest in or a lien upon the fund it amounted to or was for a sum approximating $2000, and that if she was entitled to any portion of the fund it was to such sum. We do not think this follows. She contended that she owned $2000, or had an equitable lien upon approximately that sum out of the one-half of the net proceeds otherwise payable to the son. He denies this as to the sum of $6300 and makes no claim upon the balance of that half, leaving her claim of ownership or lien undenied as to such balance, amounting to about $400. The court sustained the son as to the $6300, for the reason that the right of the mother thereto or therein had been conveyed or released to the son, and the balance was in this case very consistently decreed to her, in the absence of any denial of her right thereto. For the purpose of preserving the right of the mother to seek a remedy against the son to compel the payment of any moneys advanced to

him or for the payment of sums advanced by her in the payment of interest due on the encumbrance on the farm and for making improvements on the farm, the circuit court inserted in the decree the language following: '

"And the court finds that this decree shall be without prejudice to Mary A. Dyas for her claim of $1350 evidenced by a note and for her claim of seven hundred dollars ($700) which is claimed to have been advanced by the said Mary A. Dyas to the said Charles D. C. Dyas, and that said claim or claims cannot be adjudicated in this proceeding for the reason that the same are without equity and can not be made a charge in this suit against the funds now in the bank, and the claim of the said Mary A. Dyas for the said sum of $1350 and the sum of seven hundred dollars ($700) is hereby dismissed for want of equity."

Mrs. Dyas urges that this is not sufficient to fully protect her rights, and we are of the opinion that there is some basis for this contention, especially in view of the fact that the amounts specified in the quoted language do not seem to be correct. Accordingly the decree of the circuit court will be modified by the elimination of the language just quoted therefrom and by the insertion of the following in lieu thereof, to-wit:

"It is ordered, adjudged and decreed that the right of Mary A. Dyas to recover from Charles D. C. Dyas any money heretofore advanced or paid to him by her, and to recover from him any moneys advanced by her in paying interest on an encumbrance upon the real estate in question or for the purpose of making improvements upon that real estate, is not in any way prejudiced by this decree. The question whether he is indebted to her in any sum whatever is not hereby adjudicated."

The Appellate Court in its opinion reached the conclusion that a novation had taken place by which the son had ceased to be liable to the mother for any sum whatsoever, and by which the father had become liable to pay to the

mother the amounts which theretofore had been properly chargeable by her against her son. The judgment of the Appellate Court was correct whether or not such a novation did take place, and it seems to us that the views of the court expressed on that subject were not necessary to the decision of the case, and for this reason the opinion so expressed by the Appellate Court should not be given weight in any litigation hereafter arising between the mother and the son in reference to the amounts which she claims to be due her from him.

The judgment of the Appellate Court and the decree of the circuit court, modified as above indicated, will be affirmed. Each party will pay one-half the costs in this court.

*Modified and affirmed.*