# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

HOMER K. GALPIN *vs.* THE CITY OF CHICAGO *et al.* Appellees.—(ELIZABETH C. WAYMAN, Admx., Appellant.)

*Opinion filed June 24, 1915—Rehearing denied October 7, 1915.*

1. CONSTITUTIONAL LAW—*constitutional provision as to amending laws construed.* Section 13 of article 4 of the constitution, providing that no law shall be revived by reference to its title only, etc., was not intended to limit or control repeals by implication, and if an act is complete in itself and does not purport to amend a prior act it is not within the constitutional prohibition, although its effect may be to repeal certain provisions contained in prior acts and substitute new provisions in lieu thereof.

2. SAME—*when act is within constitutional prohibition as to amending laws.* Even though an act professes to be an independent one and does not purport to amend any prior act, yet if, in fact, it makes changes in an existing act by adding new provisions and mingling the new with the old on the same subject, so as to make of the old and the new a connected piece of legislation covering the same subject, the later act must be considered an amendment of the former and is within the constitutional prohibition.

3. SAME—*part of section 58 of Municipal Court act is unconstitutional.* That part of section 58 of the Municipal Court act, as amended in 1907, which provides for the payment to the city of Chicago of one-half of all moneys collected upon judgments of the municipal court in cases of violation of park ordinances and for the payment of the remaining one-half to the board of park com-

missioners in whose favor the judgments were rendered is not within the title of the act and is unconstitutional.

4. SAME—*act of 1907, which required State's attorneys to pay fees into county treasury, was unconstitutional.* The act of 1907, (Laws of 1907, p. 320,) since repealed, which purported, by its title, to amend the Fees and Salaries act by adding section 9a, requiring State's attorneys in counties of the third class to pay all fees collected into the county treasury, was unconstitutional, in that its effect was to amend section 8 of the Fees and Salaries act by taking away the beneficial interest given by such section to State's attorneys in all fees collected by them, and was therefore an amendment of an act by reference to its title, only. (*Lyons* v. *Police Pension Fund,* 255 Ill. 139, followed.)

5. SAME—*act of 1907, for payment of further compensation to State's attorney of Cook county, was unconstitutional.* The act of 1907, (Laws of 1907, p. 323,) since repealed, which was entitled "An act providing for the payment by the county of Cook of further compensation to the State's attorney of said county," was in violation of the provision of section 13 of article 4 of the constitution that no act shall embrace more than one subject and that shall be expressed in its title, since the effect of the act was not merely to provide further compensation to such State's attorney, but also to take away from him the right to fees and commissions to which he was entitled under section 8 of the Fees and Salaries act, without mention of such purpose in the title.

6. FEES AND SALARIES—*promise to perform duties of office for compensation other than that fixed by law is illegal.* Fees or salary of an officer which are fixed by law are incident to the office, and as it is contrary to public policy for a candidate to attempt to attain an office by a promise to perform the duties for any compensation other than that fixed by law, such a promise is illegal and will not be enforced, by way of estoppel, in a suit begun after the term of office has expired, to recover the legal compensation.

7. SAME—*what does not raise estoppel against collecting fees.* The mere fact that a public officer has, by treating an act of the legislature as valid, received less compensation for his services than he would be entitled to if the law were invalid, does not raise an estoppel against his right to attack the validity of the act after his term of office has expired and recover the fees to which he is entitled if the act be invalid.

8. STATE'S ATTORNEYS—*section 8 of Fees and Salaries act does not entitle State's attorney to fees not taxed as costs.* Section 8 of the Fees and Salaries act, as amended in 1907 and 1909, does not entitle the State's attorney of Cook county to any of the fees allowed by such section until the same have been taxed as costs,

and it is only when such fees have been taxed as costs and the same cannot be collected from the persons against whom they are taxed that he has the right to apply fines and forfeitures collected by him to the payment of such fees.

9. SAME—*when the fines and penalties paid to clerk are "collected" by State's attorney.* Fines and penalties paid to a clerk of court are "collected" by the State's attorney, within the meaning of section 8 of the Fees and Salaries act, when the prosecution of the case which resulted in the imposition of the fine or penalty was conducted by the State's attorney and when the law makes it the duty of the State's attorney to collect fines and penalties imposed in suits not prosecuted by him; and where there is no evidence to the contrary it must be presumed that the State's attorney prosecuted all suits which it was his duty, under the statute, to prosecute.

10. SAME—*what suits for penalties should be prosecuted by the State's attorney.* Prosecutions for violations of the provisions of the Pharmacy act, the Dentistry act and the Employment Offices and Agencies act are prosecutions in which the people of the State are concerned and come within the duties prescribed by law for State's attorneys, and the fines and penalties imposed for violations of such acts are therefore to be regarded as "collected" by the State's attorney in determining the question of commissions.

11. SAME—*effect of act of 1911 as to fines and penalties for violations of park ordinances.* By the act of 1911, providing for a park police pension fund, (Laws of 1911, p. 445,) the right of the superintendent of schools to moneys collected as fines and penalties for violations of park ordinances was taken away, and with it the duty of the State's attorney to prosecute suits for such violations, and 'his right to commissions on the fines and penalties imposed therefor, which had theretofore existed, ceased and determined, and he has no right to have fines and penalties imposed since that act took effect, applied upon uncollected fees.

12. SAME—*section 8 of Fees and Salaries act was not repealed by implication.* The provision of section 8 of the Fees and Salaries act, as amended in 1883, that the ten per cent commission of State's attorneys "shall be paid out of any fines or forfeited recognizances collected by them," and that they shall have a lien for their fees "on judgments for fines and forfeitures procured by them," has been, in substance, embodied in all subsequent amendments of section 8 and must be regarded as having been continuously in force since 1883, and said section has not been repealed, by implication, by the various acts providing for the disposition of fines and penalties.

13. INTEREST—*disposition of interest received by clerk of court upon fines and penalties.* Upon a bill of interpleader by a clerk of a court to determine the rights of various claimants to a fund in his hands derived from fines and penalties, interest which he has received upon such fund should be divided into parts, proportionately, the same as the principal, and distributed accordingly among the claimants found entitled to the principal.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

THOMAS MARSHALL, for appellant.

JOHN W. BECKWITH, Corporation Counsel, (JOSEPH F. GROSSMAN, of counsel,) for appellee the City of Chicago; ROBERT REDFIELD, for the South Park Commissioners; FRANCIS O'SHAUGHNESSY, for the Lincoln Park Commissioners; JACOB C. LEBOSKY, for the West Chicago Park Commissioners; P. J. LUCEY, Attorney General, and THOMAS J. O'HARE, for the Boards of Pharmacy, Dental Examiners and the Commissioners of Labor; CARL R. CHINDBLOM, and JOHN P. BARNES, for Cook county; WILLIAM F. STRUCKMANN, and WALTER E. MOSS, for the County Superintendent of Schools; HOWARD W. HAYES, for the trustees of the several pension funds; HENRY P. CHANDLER, and M. H. GLADSTONE, for certain appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

On December 13, 1912, Homer K. Galpin filed in the circuit court of Cook county his bill of interpleader, alleging that in November, 1906, he was elected clerk of the municipal court of Chicago and held that office until December 2, 1912; that during the four-year period beginning December 6, 1908, and ending December 1, 1912, the fines and penalties paid to him by persons convicted of violating various statutes and park ordinances particularly mentioned in the bill, aggregated the sum of $191,206.50,

and that he has received interest amounting to $5998.10 on said fund and $5272.30 as interest on funds other than those above mentioned; that John E. W. Wayman, who was State's attorney of Cook county during the said four-year period, the county of Cook and the superintendent of schools of Cook county are each claiming the entire fund, and the city of Chicago, the South Park Commissioners, the Commissioners of Lincoln Park, the West Chicago Park Commissioners, the North Shore Park District, the Ridge Avenue Park District, the State Board of Pharmacy, the Illinois State Board of Dental Examiners, the State Board of Commissioners of Labor, E. A. Rust, Charles Hagenbucher, Christ Heiser, Joseph Obornij and Matt A. Berkholz are each claiming specific portions of said fund; that complainant has always been, and is now, willing to pay the amounts collected by him as such clerk, and interest accrued thereon, to the person or persons lawfully entitled to the same, but is, by reason of the various conflicting claims aforesaid, uncertain as to the proper distribution of the fund. All of said claimants were made defendants to the bill, which prayed that they be required to interplead and settle and adjust their demands among themselves.

All of the defendants except Rust, Hagenbucher, Heiser, Obornij and Berkholz, who were deputy game wardens and whose interests, if any, in the fund are insignificant, answered the bill, setting up their various claims to the fund or to portions thereof. The boards of trustees of various police pension funds filed an intervening petition, praying that they be made defendants and be permitted to set up, by way of answer, their claims to portions of the fund. The prayer of the petition was granted, and answers were filed by the respective boards of trustees of the police pension funds. Hale Gossart also filed an intervening petition praying to be made a party defendant and claiming $75 of the fund.

On September 15, 1913, the death of John E. W. Way-man was suggested, and Elizabeth C. Wayman, as administratrix of his estate, was substituted as a defendant in his stead. Thereafter the court entered an order allowing the complainant to retain out of the fund in his hands $1049.85 on account of costs and expenses incurred by him in filing the bill of interpleader, and directing him to pay the balance, amounting to $201,427.05, to the clerk of the circuit court, which was accordingly done and the complainant was dismissed from the suit.

The cause was heard by the chancellor upon a stipulation of facts, and a decree was entered finding that the defendant Hale Gossart is entitled to $75 of said fund, that the city of Chicago is entitled to $5272.32 of said fund and that the county of Cook is entitled to the balance of said fund, and directing the clerk to distribute the fund among said parties in the proportions in which they are entitled to the same as found by the decree. From that decree Elizabeth C. Wayman, as administratrix, has prosecuted this appeal, and various of the defendants who were found to have no interest in the fund, and the city of Chicago, have assigned cross-errors.

No complaint is made by any of the parties of that portion of the decree which awards to Gossart $75 and to the city of Chicago $5272.32 of the fund. The controversy here is over the proper distribution of the remainder of the fund, amounting to $196,079.73.

The Wayman estate claims the entire fund under and by virtue of section 8 of the Fees and Salaries act and section 239 of the School law. That portion of said section 8, as amended in 1907, necessary to be here noticed is as follows: "State's attorneys shall also be entitled to the following fees: * * * All the foregoing fees shall be taxed as costs to be collected from the defendant, if possible, upon conviction. But in cases of inquiry into the sanity or insanity of any person alleged to be insane, in

cases on a charge of bastardy and in case of appeal or writ of error in the Supreme or Appellate Court, where judgment is in favor of the accused, the fees allowed the State's attorney therein shall be retained out of the fines and forfeitures collected by them in other cases. Ten per cent of all moneys, except revenue, collected by them and paid over to the authorities entitled thereto, which per cent, together with the fees provided for herein that are not collected from the parties tried or examined, shall be paid out of any fines and forfeited recognizances collected by them. State's attorneys shall have a lien for their fees on moneys except revenue received by them until such fees and earnings are fully paid." (Laws of 1907, p. 329.)

Section 239 of the School law of 1909 reads as follows: "It shall be the duty of the State's attorneys of the several counties to enforce the collection of all fines, forfeitures and penalties imposed or incurred in the courts of record of their respective counties, and to pay the same to the county superintendent of the county wherein the same have been imposed or incurred, retaining therefrom the fees and commissions allowed them by law." (Laws of 1909, p. 406.) This provision of the School law of 1909 is identical with section 2 of article 14 of the School law of 1889, which was in force when Wayman became State's attorney of Cook county.

The county of Cook claims the entire fund under and by virtue of two acts of the General Assembly approved May 17, 1907, both of which have since been repealed. One of these acts is referred to in this proceeding as House Bill 231 and the other as House Bill 232. House Bill 231 was as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That 'An act concerning fees and salaries, and to classify the several counties of this State with reference thereto,' approved March 29, 1872, in force July 1, 1872, title as amended by

269 — 3

act approved March 28, 1874, in force July 1, 1874, 'Act as amended by an act approved May 15, 1903, in force July 1, 1903,' be and the same is hereby amended by adding thereto section 9*a* to read as follows:

"9*a*. Each State's attorney in counties of the third class, hereafter to be elected, at the end of each and every quarter of the year after entering upon the duties of his office and within ten days after the expiration of his term of office shall pay all fees collected and remaining in his hands into the county treasury of his county." (Laws of 1907, p. 320.)

House Bill 232 read as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That the State's attorney of Cook county shall be paid by the said county, in addition to the salary which may be paid to him from the State treasury, such further compensation as will make his salary amount to the sum of $10,000 per annum, which sum shall be in full payment for all services rendered by him.

"Sec. 2. The said compensation shall be paid in equal quarterly installments; and it shall be the duty of the county comptroller of said county, at the end of each and every quarter of the year, to draw an order or warrant therefor in favor of the State's attorney on the county treasurer of said county, whose duty it shall be to pay the same on its presentation properly endorsed: *Provided,* that no warrant shall be drawn or money paid unless the State's attorney shall have, for the current quarter, made a report to the commissioners of said county and paid into the county treasury all fees collected by him as State's attorney for said quarter." (Laws of 1907, p. 323.)

The Wayman estate contends that both of these acts were unconstitutional for various reasons, but it will be necessary to consider but one of the grounds urged against each act.

It is contended by the Wayman estate that House Bill 231 violated that portion of section 13 of article 4 of the constitution which provides that "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act." This provision of the constitution has been considered in numerous cases decided by this court since the adoption of our present constitution. The question arising in most of the cases has been whether an act which does not in express terms purport to amend another act, but which in fact does alter or change some prior act, is within the constitutional inhibition. Soon after the adoption of the constitution of 1870 this question was presented in *People* v. *Wright,* 70 Ill. 388. It was pointed out in that case that the act there under consideration did not purport to amend any particular section of any act, and that all that could be said of it in that respect was, that by implication it amended the municipal charters of cities. With reference to the constitutional provision above quoted it was said: "It cannot be held that this clause of the constitution embraces every enactment which in any degree, however remotely it may be, affects the prior law on a given subject, for to so hold would be to bring about an evil far greater than the one sought to be obviated by this clause." In many subsequent cases it has been held that it was not the purpose of the framers of the constitution to limit or control repeals by implication, but that if an act is complete in itself and does not purport to amend a prior act it is not within the constitutional prohibition, although its effect may be to repeal certain provisions contained in prior acts and to substitute new provisions in lieu thereof. (*Geisen* v. *Heiderich,* 104 Ill. 537; *School Directors* v. *School Directors,* 135 id. 464; *People* v. *Knopf,* 183 id. 410; *People* v. *Loeffler,* 175 id. 585; *Erford* v. *City of Peoria,* 229 id. 546; *People* v. *McBride,* 234 id. 146; *People* v. *Jones,* 242 id. 138; *Hollingsworth* v. *Coal*

*Co.* 243 id. 98; *People* v. *VanBever,* 248 id. 136; *People* v. *Crossley,* 261 id. 78.) On the other hand, even though an act professes to be an independent act and does not purport to amend any prior act, still if, in fact, it makes changes in an existing act by adding new provisions and mingling the new with the old on the same subject so as to make of the old and the new a connected piece of legislation covering the same subject, the later act must be considered an amendment of the former and as within the constitutional prohibition. (*Badenoch* v. *City of Chicago,* 222 Ill. 71; *Brooks* v. *Hatch,* 261 id. 179.) The case at bar, however, is not governed by the rules laid down in either of the two lines of cases above mentioned, for the reason that House Bill 231 did not purport to be an independent act or to be complete in itself, but both in the title and in the body of the act it was stated that the purpose of the act was to "amend" the Fees and Salaries act "by adding thereto section 9*a.*" An examination of the provisions of House Bill 231 in connection with the other provisions of the Fees and Salaries act discloses the fact that the only purpose of the new act was to amend section 8 of the prior act by changing the beneficiary of the fees authorized by said section 8 to be taxed as costs in favor of State's attorneys in counties of the third class. Under the Fees and Salaries act as it existed at the time of the adoption of House Bill 231, State's attorneys in all of the counties of the State were the beneficiaries of all the fees enumerated in said section 8. The effect of House Bill 231, if valid, was to take away from State's attorneys in counties of the third class the right to the beneficial enjoyment of such fees and to make the county the beneficiary thereof. House Bill 231 therefore amended a prior law by reference to its title, only, and the section amended was not inserted at length in the new act. This was a clear violation of section 13 of article 4 of the constitu-

tion, (*People* v. *Election Comrs.* 221 Ill. 9,) and rendered said House Bill 231 inoperative and void.

The situation here is, in principle, the same as that disclosed in *Lyons* v. *Police Pension Fund*, 255 Ill. 139. The title of the act there held to violate the provision of the constitution above quoted was, "An act to amend an act entitled 'An act to provide for the setting apart, formation and disbursement of a police pension fund in cities, villages and incorporated towns.'" The nature of the amendment was the addition to the former act of a new section, to be known as section 3*a*, extending the benefit of the act to police matrons in the police department of a city upon the terms specified in such additional section. In holding that the amendatory act violated the provision of section 13 of article 4 of the constitution above quoted we said: "The title gives no intimation of the character of the amendment or the section or part of the act to be amended. The amendatory act was, in fact, an amendment of section 3 of the original act, where, only, it is declared who may become entitled to pensions. * * * The amendatory act changes that section by adding to the persons who may receive pensions, police matrons appointed and sworn, of twenty years' service, and it also contains many provisions applying to pensions to police matrons which do not appear in original section 3 and which might have appeared as amendments to other sections or as additional sections. Section 3 as amended is not inserted at length in the new act. In order to ascertain the extent of the provisions of that section to-day, it is necessary to examine not only the amendatory act, but to go back to the former statute and by reading the two together ascertain what persons may become pensioners. This is the condition which section 13 of article 4 of the constitution was intended to prevent by the provision that 'no law shall be revived or amended by reference to its title, only, but the law revived, or the section amended, shall be inserted at

length in the new act.' Calling the amendment an additional section does not change its character and cannot evade the constitutional requirement."

In this case, as in the *Lyons case*, the purpose of the act was expressly stated to be to amend a prior act by adding thereto a new section. The new section added by amendment in the *Lyons case* increased the beneficiaries who might participate in the fund provided for in the original act, by adding thereto a new class of beneficiaries. The new section added by amendment in this case took away from one class of beneficiaries the right to the fees and commissions allowed them by section 8 of the Fees and Salaries act and substituted another class of beneficiaries therefor. In this case, as in the *Lyons case*, the title gave no intimation of the character of the amendment or the section or part of the act to be amended. The amendatory act was, in fact, an amendment of section 8 of the original act, and changed that section by substituting for the beneficiaries specified in said section 8 other beneficiaries designated in the amendatory act. Section 8, as amended, was not inserted at length in the new act, and in order to ascertain the extent of the provisions of that section as it existed after the adoption of House Bill 231, it was necessary to examine not only the amendatory act but to go back to the former statute, and by reading the two together ascertain the disposition made by law of the fees provided for in said section 8 and the rights of the county with reference to those fees. This case, therefore, as well as the *Lyons case*, presents a condition which section 13 of article 4 of the constitution was intended to prevent by the provision that "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act."

Section 13 of article 4 of the constitution also provides: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." With ref-

erence to this provision we said in *Rouse* v. *Thompson,*
228 Ill. 522: "The title of an act formerly was of little
importance. Of recent years, however, by reason of the
adoption by most of the States of constitutional provisions
similar to the one above quoted, the title to an act in such
States is now of very great importance. Some of the
reasons which led to the adoption of such constitutional
provisions are said to be, first, to prevent 'log-rolling' leg-
islation; second, to prevent surprise or fraud upon the
legislature by inserting provisions into bills of which the
titles give no intimation and which might by oversight be
carelessly and unintentionally adopted; and third, to fairly
apprise the people, through such publication of legislative
proceedings as is usually made, of the subjects of legisla-
tion being considered, so they might be heard thereon, if
they so desire, by petition or remonstrance. And while
such constitutional provisions are to be liberally construed
in order that a legislative enactment may be sustained, the
court cannot permit such provisions to be disregarded or
overridden in the enactment of legislation."

The title of said House Bill 232 was, "An act pro-
viding for the payment by the county of Cook of further
compensation to the State's attorney of said county." This
was a companion bill of House Bill 231 and was evidently
passed by the legislature on the supposition that House
Bill 231 was a valid enactment. Had House Bill 231 been
valid, then the objection made by the Wayman estate that
the subject of House Bill 232 was not expressed in the
title of the act could not be sustained, because had House
Bill 231 taken away the right of the State's attorney to
the fees specified in section 8 of the Fees and Salaries act,
the effect of House Bill 232 would have been merely to
provide additional compensation for the State's attorney
of Cook county. If, however, House Bill 232 be consid-
ered alone and without regard to House Bill 231,—and
it must now be so considered,—then it must be held that

it violated that provision of the constitution last above
quoted, because, when so considered, its effect, if enforced,
would have been not merely to provide for the payment
of further compensation to the State's attorney of Cook
county, but also to take away from him the right to the
fees and commissions allowed him by section 8 of the Fees
and Salaries act. The title of the act, professing to be the
title to an act providing for the payment of further com-
pensation to the State's attorney, gave no intimation of
the provisions of the act depriving the State's attorney of
the right to the beneficial enjoyment of the fees and com-
missions allowed him by section 8 of the Fees and Salaries
act. "Further compensation" means compensation in ad-
dition to that already provided for, and it requires no ar-
gument to show that provisions in the act which, instead
of providing for the payment of further compensation to
the State's attorney, attempted to take away from him the
compensation then provided for by law, were not within
the title of the act and were therefore inoperative and void.
It is therefore clear that House Bill 232 must fall with
House Bill 231, because if House Bill 232 be considered
as the legislation depriving the State's attorney of Cook
county of the fees allowed him by section 8 of the Fees
and Salaries act and requiring the payment into the county
treasury of all fees collected by him, the subject of the act
was not expressed in the title.

For the reason that the two acts under which the
county of Cook claims the fund in controversy were void,
it necessarily follows that the county has no valid claim to
the fund or to any part thereof, and the decree of the cir-
cuit court in so far as it awards a portion of the fund to
the county is erroneous. Each of these acts has been re-
pealed by a later act which has been held valid in *Hoyne* v.
*Danisch,* 264 Ill. 467, *Butzow* v. *Kern,* id. 498, and *Hoyne*
v. *Ling,* id. 506. The matters determined in those cases
have no bearing upon the questions here involved and the

decision in this case does not affect the questions there decided.

From the stipulation upon which the cause was heard in the circuit court it appears that Wayman stated publicly during his campaign for election in October, 1908, that if elected State's attorney he would accept an annual salary of $10,000 and pay into the county treasury all fees. It further appears that Wayman received from the county treasurer of Cook county, upon warrants drawn by the county comptroller, each of which warrants recited that it was for Wayman's salary as State's attorney, the sum of $800 per month during his entire term of office, and that during such period he paid to the county treasurer a total of $62,970.75, which sum he reported to the board of commissioners of Cook county represented the fees received by him as State's attorney during his term of office. It is contended by the various parties whose claims conflict with that of the Wayman estate, that by reason of this conduct on Wayman's part his estate is now estopped from claiming any portion of the fund in controversy. With this contention we cannot agree. The fees or salary of an officer having been fixed by law become an incident to the office, and it is contrary to public policy for candidates to attempt to attain such office by promises made to the electors to perform the duties of the office for any other or different compensation than that fixed by law. Such promises being illegal, they cannot be enforced. (*Abbott v. Hayes County,* 78 Neb. 729; *People v. Board of Police,* 75 N. Y. 38.) Whether, as held by some courts of last resort, such conduct on the part of a successful candidate is sufficient to invalidate his election it is not necessary or proper here to determine, as that question could only be properly presented in a proceeding brought against the officer to test his right to office. It cannot be raised where, as here, the officer's term has expired and the controversy concerns only his right to the fees of his office.

Neither was Wayman estopped from claiming the compensation fixed by statute for his services as State's attorney. In *Holcomb* v. *Boynton,* 151 Ill. 294, we said: "It is a novel idea in the law of estoppel that the doctrine should be applied to a person who has been guilty of no fraud, simply because, under a misapprehension of the law, he has treated as legal and valid an act void and open to the inspection of all. As we understand the doctrine of estoppel *in pais,* it is based upon a fraudulent purpose and a fraudulent result. Before it can be invoked to the aid of a litigant it must appear that the person against whom it is invoked has by his words or conduct caused him to believe in the existence of a certain state of things and induced him to act upon that belief. If both parties are equally cognizant of the facts and one has acted under a mistaken idea of the law, the other party cannot say he has been deceived thereby and is entitled to an application of the rule, but will be considered as having acted upon his own judgment, solely." To the same effect is *Finch* v. *Theiss,* 267 Ill. 65.

In order to clearly understand the nature of the claims to the fund made by the various claimants other than the county of Cook it will be necessary to mention the sources from which this fund came into the hands of the clerk of the municipal court.

From the stipulation upon which the cause was heard by the chancellor it appears that the fund in controversy represents the fines and penalties received by the clerk of the municipal court during the four-year period beginning December 6, 1908, and ending December 1, 1912, and interest thereon; that the receipts from fines in criminal and *quasi* criminal cases amounted to $109,369; that the receipts from penalties imposed for violations, of the provisions of an act entitled "An act to promote attendance of children in schools and to prevent truancy," approved June 11, 1897, in force July 1, 1897, and sections 274 and

275 of an act entitled "An act to establish and maintain a system of free schools," approved and in force June 12, 1909, amounted to $1222.50; that the receipts from penalties imposed for violations, within the jurisdiction of the city of Chicago, of an act entitled "An act defining motor vehicles," etc., approved May 28, 1907, in force July 1, 1907, and an act of like title approved July 10, 1911, in force July 1, 1911, amounted to $230.50; that the receipts from penalties imposed in proceedings instituted by the South Park Commissioners for violations of South Park ordinances amounted to $40,866.50, of which $17,508 was collected prior to July 1, 1911, and $23,-358.50 on or after that date; that the receipts from penalties imposed for violations, within the jurisdiction of the South Park Commissioners, of the Motor Vehicle acts of May 28, 1907, and June 10, 1911, amounted to $8889; that the receipts from penalties imposed in proceedings instituted by the Commissioners of Lincoln Park for violations of Lincoln Park ordinances amounted to $1324, of which $405 was collected prior to July 1, 1911, and $919 on or after that date; that the receipts from penalties imposed for violations, within the jurisdiction of the Commissioners of Lincoln Park, of the Motor Vehicle acts of May 28, 1907, and June 10, 1911, amounted to $7949; that the receipts from penalties imposed in proceedings instituted by the West Chicago Park Commissioners for violations of West Chicago Park ordinances amounted to $9046.50, of which $4954 was collected prior to July 1, 1911, and $4092.50 on or after that date; that the receipts from penalties imposed for violations, within the jurisdiction of the West Chicago Park Commissioners, of the Motor Vehicle acts of May 28, 1907, and June 10, 1911, amounted to $11,115; that the receipts from penalties imposed in proceedings instituted by the commissioners of North Shore Park District for violations of North Shore Park ordinances amounted to $33; that the

receipts from penalties imposed for violations,. within the jurisdiction of the commissioners of North Shore Park District, of the Motor Vehicle acts of May 28, 1907, and June 10, 1911, amounted to $20; that the receipts from penalties imposed in proceedings instituted. by the commissioners of Ridge Avenue Park District for violations of Ridge Avenue Park ordinances amounted to $5; that the receipts from penalties imposed for. violations of the provisions of an act entitled "An act to regulate the practice of pharmacy in the State ,of Illinois," etc., approved May 11, 1901, in force July 1, 1901, amounted to $145; that the receipts from penalties imposed for violations of the provisions of an act entitled "An act to regulate the practice of dental surgery and dentistry in the State of Illinois," etc., approved June 11, 1909, in force July 1, 1909, amounted to $335; that the receipts from penalties for violations of the provisions of an act entitled "An act relating to employment offices and agencies," approved and in force May 11, 1903, amounted to $599; and that the receipts from penalties imposed for violations of the provisions of an act entitled "An act for the protection of game, wild fowl and birds," etc., approved April 23, 1903, in force July 1, 1903, in actions in which complaints were filed by E. A. Rust, Charles Hagenbucher, Christ Heiser, Joseph Obornij and Matt A. Berkholz, deputy game wardens, amounted to $57.50. The interest which accrued in the hands of the clerk of the municipal court upon the respective sums above mentioned aggregated $5998.10. The clerk also received $5272.30 interest on funds in his hands other than the funds above mentioned. The item of interest last mentioned was awarded to the city of Chicago, and no complaint is made of the action of the chancellor in that regard.

The Wayman estate claims that the uncollected fees to which Wayman, during his term of office, was entitled by virtue of section 8 of the Fees and Salaries act amounted

to $416,729.90; that no part of the same has been paid, and that by virtue of said section 8, considered in connection with section 239 of the School law, the Wayman estate is entitled to all the moneys received by the clerk of the municipal court from fines and penalties, and the interest accrued thereon, to apply on these uncollected fees. The other claimants contend that the uncollected fees to which Wayman was entitled by virtue of said sections 8 and 239 do not amount to as much as the fund in controversy, so that in any event the Wayman estate would not be entitled to the entire fund. This controversy over the amount of uncollected fees arises from the following state of facts:

Section 8 of the Fees and Salaries act, as amended in 1907 and as in force when Wayman became State's attorney of Cook county, after providing a fee of $30 for each conviction for offenses punishable by death or imprisonment in the penitentiary, allowed a fee of $15 for each conviction in other cases in courts of record. (Laws of 1907, p. 239.) In 1909 the legislature amended said section 8 of the Fees and Salaries act by providing, with reference to the class of cases in which a fee of $15 was allowed, that "no such fees shall be allowed in any such case tried in the municipal court of Chicago, unless the same be tried by jury or unless the trial thereof shall occupy more than one full day, and then only in case the court shall expressly order such fees to be allowed." (Laws of 1909, p. 231.) After this act became effective 16,955 convictions were had in criminal cases in the municipal court of Chicago for violations of provisions of the Criminal Code wherein no State's attorney's fees were taxed as costs and wherein no order was entered that any such fees be allowed. The claim for uncollected fees by the Wayman estate includes $254,325 on account of the 16,955 convictions in the municipal court in which no State's attorney's fees were taxed as costs against the defendants. It also

includes $19,120.65 as a commission of ten per cent on the principal sum of $191,206.50 received by the clerk of the municipal court from fines and penalties imposed by the municipal court of Chicago during Wayman's term of office.

It is not necessary to determine whether the provision added by the amendment of 1909 that no State's attorney's fees should be allowed in certain cases tried in the municipal court of Chicago violated some provision of the constitution, or whether, because enacted during Wayman's term of office, it could be enforced against him or against his estate, for the reason that as no such fees were taxed as costs against the defendants in such cases they were not included within the provision of said section 8 authorizing the payment of fees that are not collected from the parties tried or examined out of any fines and forfeitures collected by the State's attorney. This conclusion necessarily follows from a consideration of the various provisions of said section 8 as amended in 1907 and as again amended in 1909. During all of Wayman's term it was provided by said section 8 that "all the foregoing fees shall be taxed as costs to be collected from the defendant, if possible, upon conviction," and that "the fees provided for herein that are not collected from the parties tried or examined" shall be paid out of any fines or forfeitures collected by them. The intention of the legislature, as thus clearly expressed, was to provide certain fees as compensation for the State's attorney which should be taxed as costs and should be collected from the persons convicted, if possible, but if in any case it should not be possible to collect the fee from the person convicted, then the same should be paid out of any fines and forfeitures collected by the State's attorney. The State's attorney did not become entitled to any of the fees allowed by said section 8 until the same had been taxed as costs, and it was only when such fees had been taxed as costs and the same

could not be collected from the persons against whom they were taxed that the State's attorney had the right to apply fines and forfeitures collected by him to the payment of such fees. In *Galpin* v. *City of Chicago,* 249 Ill. 554, in considering what is included within the term "uncollected costs," as used in the Municipal Court act, where the clerk is authorized to apply moneys received from fines and penalties to the payment of the uncollected costs in criminal and *quasi* criminal cases, we said: "The phrase 'uncollected costs,' as used here, was intended to include only costs collectible by means of legal process,—that is, costs for which judgment had been rendered but which the proper officer had been unable to collect. Where the law does not provide for a judgment for costs and no judgment therefor is rendered, we are of the opinion that the statute was not intended to authorize the taking of any amount from the fund involved herein, thereby diminishing it to the detriment of the several governmental agencies or governmental purposes to which it might otherwise be applied." If the provision inserted in said section 8 by the amendment of 1909, taking away from the State's attorney his right to fees in certain cases tried in the municipal court, was invalid as applied to Wayman, it was his duty to have his fee in each case taxed as costs against the defendant, in order that the same might be collected, if possible, from the person convicted. Having failed to pursue that course his estate is not entitled to have any portion of the fund derived from fines and penalties applied to the payment of such fees.

Said section 8, as amended in 1907 and as again amended in 1909, provided that the State's attorney should be entitled to ten per cent of all moneys, except revenue, collected by him and paid over to the authorities entitled thereto, and that the same should be paid out of any fines and forfeitures collected by him. As hereinbefore stated, the Wayman estate claims that these commissions amount

to $19,120.65, being ten per cent of all fines and penalties received by the clerk of the municipal court from all sources. Whether this contention is to be sustained depends upon whether all of these fines and penalties were "collected" by Wayman, within the meaning of the statutes allowing such commission. In our judgment fines and penalties paid to the clerk of a court were "collected" by the State's attorney, within the meaning of section 8 of the Fees and Salaries act, (1) when the prosecution of the case which resulted in the imposition of the fine or penalty was conducted by the State's attorney; and (2) when the law made it the duty of the State's attorney to collect fines and penalties imposed in suits not prosecuted by him. This was assumed, without discussion, in *Galpin v. City of Chicago, supra.* It must be presumed, there being no evidence to the contrary, that Wayman prosecuted all suits which, under the statute, it was his duty to prosecute. In order to determine upon what fines and penalties a commission of ten per cent for collection was allowed the State's attorney by said section 8, it is therefore necessary to determine what cases, under the statute, it was Wayman's duty to prosecute and what fines and penalties imposed in suits not prosecuted by him it was his duty, under the statute, to collect. It is conceded by the appellees that it was Wayman's duty, as State's attorney, to prosecute all suits from which the fines and forfeitures in question were derived except those brought to recover penalties for the violation of the Pharmacy act, the Dentistry act and the Employment Offices and Agencies act, and those brought to recover penalties for the violation of park ordinances.

Among the duties of State's attorneys, as prescribed by section 5 of the act entitled "An act in regard to attorneys general and State's attorneys," approved March 26, 1874, in force July 1, 1874, are: "First—To commence and prosecute all actions, suits, indictments and

prosecutions, civil and criminal, in any court of record in his county, in which the people of the State or county may be concerned. Second—To prosecute all forfeited bonds and recognizances, and all actions and proceedings for the recovery of debts, revenues, moneys, fines, penalties and forfeitures accruing to the State or his county, or to any school district or road district in his county. * * * Tenth—To perform such other and further duties as may, from time to time, be enjoined on him by law." (Rev. Stat. 1874, p. 173.)

Section 16 of the Dentistry act of 1909 provides that "any person who shall practice dentistry in this State without being registered or without a license for that purpose, or violates any of the provisions of this act, shall be subject to prosecution before any court of competent jurisdiction upon complaint, information or indictment, and shall, upon conviction, be fined for each offense in any sum not less than fifty dollars ($50) nor more than two hundred dollars ($200). All fines imposed and collected under this act shall be paid to the Illinois State Board of Dental Examiners for its use." This is identical with the provision contained in the Dentistry act of 1905.

Section 7 of the Employment Offices and Agencies act provides that "any superintendent, assistant superintendent or clerk, who shall accept, directly or indirectly, any fee or compensation from any applicant or from his or her representative, shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than twenty-five nor more than fifty dollars and imprisoned in the county jail not more than thirty days." Section 10 of the same act provides: "It shall be the duty of the commissioners of labor, and the secretary thereof, to enforce this act. When informed of any violation, it shall be their duty to institute criminal proceedings for the enforcement of its penalties before any court of competent jurisdiction. Any person convicted of a violation of the

269 — 4

provisions of this act shall be guilty of a misdemeanor and shall be fined not less than fifty dollars (50) nor more than one hundred (100) dollars for each offense, or by imprisonment in the county jail for a period not exceeding six (6) months, or both, at the discretion of the court."

Prosecutions against persons violating the provisions of either of these acts are criminal suits or prosecutions in which the People of the State are concerned, and therefore come within the duties of State's attorneys as prescribed by the first subdivision of the said section 5; and section 15 of the Pharmacy act expressly provides that "it shall be the duty of the State's attorney of the county where such offense is committed to prosecute all persons violating the provisions of this act upon proper complaint being made." That portion of the fund derived from fines and penalties imposed for violations of these acts were therefore "collected" by the State's attorney, and he was entitled to a commission of ten per cent thereon.

It is not made the duty of the State's attorney to prosecute suits for the violation of park ordinances, but it does not necessarily follow that Wayman was not entitled to a commission of ten per cent upon the fines and penalties received by the clerk of the municipal court from such sources. As early as 1865 the School law of this State provided that all fines, penalties and forfeitures imposed or incurred in any of the courts of record or before any justice of the peace, except fines, forfeitures and penalties incurred or imposed in incorporated towns or cities for the violation of the by-laws or ordinances thereof, should, when collected, be paid to the school superintendent of the county wherein such fines, forfeitures and penalties have been imposed or incurred, for distribution in the same manner as the common school funds of the State are disbursed, and that it should be the duty of the State's attorneys to enforce the collection of all fines, forfeitures and penalties imposed or incurred in courts of record and

pay the same over to the school superintendents of the counties wherein the same have been imposed or incurred, retaining therefrom the fees and commissions allowed them by law. These provisions have been included in each revision of the School law since 1865 and were in force during Wayman's term of office.

It appears from the evidence herein that the South Park Commissioners, the Commissioners of Lincoln Park and the West Chicago Park District were created by private acts passed by the legislature in 1869, and although they were, respectively, empowered to pass ordinances for the regulation and government of the districts over which they were given jurisdiction and control, no provision was made for the collection of fines and penalties imposed for the violation of such ordinances nor for the disposition of moneys arising from such fines and penalties. It therefore followed as a necessary consequence, under the provisions of the School law, that it was the duty of the State's attorney to collect all such fines and penalties imposed in courts of record for the violation of park ordinances, and to pay the same over to the superintendent of schools after retaining therefrom the fees and commissions allowed him by law. No attempt was made by the legislature to otherwise dispose of such fines and forfeitures until the amendment, in 1907, of section 58 of the Municipal Court act of 1905. By the said amended section 58 it was provided with reference to fines and penalties imposed in the municipal court of Chicago in *quasi* criminal cases instituted in the name of any board of park commissioners situated, in whole or in part, within the city of Chicago, that the same should be paid to the clerk of the court and that the clerk should pay over the same as follows: "One-half of all fines and penalties to the city of Chicago, and one-half of the fines and penalties to the  *  *  *  board of public park commissioners  *  *  *  in whose favor such judgment shall have been entered." It is contended that this

section of the Municipal Court act, in so far as it at-
tempted to dispose of the fines and penalties imposed in
the municipal court of Chicago, violated that portion of
section 13 of article 4 of the constitution which provides
that no act hereafter passed shall embrace more than one
subject and that shall be expressed in the title. The title
of the Municipal Court act is, "An act in relation to a
municipal court in the city of Chicago." In *Riggs* v. *Jen-
nings,* 248 Ill. 584, we said: "The subject of legislation
is a municipal court in the city of Chicago. * * * The
title of this act covers everything in relation to the crea-
tion, organization, jurisdiction and procedure of the mu-
nicipal court, and it is not necessary that it should mention
the details of the legislation dealing with the various sub-
divisions of the subject."

Legislation concerning the disposition of fines and pen-
alties imposed by the municipal court do not relate to the
creation, organization, jurisdiction or procedure of the
court, and cannot, therefore, be said to relate to a munici-
pal court unless such disposition is incidental to legislation
providing for the maintenance of such court. Provisions
for the support of park systems or for general city pur-
poses have no relation to the maintenance of a municipal
court; neither does the fact that the provision in question
relates only to fines, penalties and forfeitures imposed in
the municipal court of Chicago bring the provision within
the title of the act. Provisions relating to the procedure
in the municipal court for the recovery of fines and pen-
alties for the violation of park ordinances, and for the
collection of such fines and penalties after they have been
imposed, relate to the municipal court, but a provision as
to the disposition of moneys collected from fines and pen-
alties imposed in the municipal court no more relates to
the municipal court than the disposition of moneys col-
lected from fines and penalties imposed in other courts.
In *People* v. *Roth,* 249 Ill. 532, we said: "The purpose

of the constitutional provision under consideration is to prevent legislation being enacted of which the title gives no hint. The requirement is for the benefit of the members of the General Assembly and of the people who are to be governed by such statutes." The title of the Municipal Court act gives no hint that the act contains any provision relating to the payment of moneys derived from fines and penalties to the city of Chicago for general corporate purposes or to certain boards of park commissioners. It follows that so much of section 58 of the Municipal Court act, as amended in 1907, as provided for the payment to the city of Chicago of one-half of all moneys collected upon judgments of the municipal court in cases for the violation of park ordinances and for the payment of the remaining one-half of such moneys to the board of park commissioners in whose favor such judgments were rendered was not within the title of the act and was therefore void.

On May 31, 1911, the legislature passed an act entitled "An act to provide for the setting apart, formation, administration and disbursement of a park police pension fund." This act became effective July 1, 1911. Section 1 of the act provides that "whenever any persons have been or may be appointed or otherwise selected as commissioners or officers and constitute a board of park commissioners for any one or more towns, whether said towns have heretofore existed or now exist under and in pursuance of any act or acts of the General Assembly of this State, for the purpose of locating, establishing, enclosing, improving or maintaining any public park, boulevard, driveway, highway or other public work or improvement, and such board of park commissioners shall have established a police force or department of police under the employ of such board of park commissioners, there shall be set apart the following moneys to constitute a police pension fund: * * * All fines and penalties collected for violations of

any of the ordinances of such board of park commissioners or of any of the laws of the State of Illinois as now in force, within the territory under the control of such board of park commissioners, in all cases in which arrests for violation of such law shall be made by officers of such police department." (Laws of 1911, p. 445.) By the adoption of this act the right of the superintendent of schools to have the moneys collected from fines and penalties imposed for the violation of the ordinances passed by the boards of park commissioners specified in the Park Police Pension Fund act ceased and determined, and as a necessary consequence it ceased to be the duty of the State's attorney of Cook county to collect such fines and penalties. He therefore had no right to a commission upon the moneys derived from fines and penalties imposed for the violation of park ordinances subsequent to July 1, 1911.

The Wayman estate contends that it has a prior right over all other claimants to so much of the fund in controversy as is required to satisfy the claim for uncollected fees of the State's attorney. Section 8 of the Fees and Salaries act, as amended in 1883, provided that the commission of ten per cent upon all moneys (except revenue) collected by the State's attorneys and paid over to the authorities entitled thereto, together with the fees provided for therein that should not be collected from the parties tried or examined, "shall be paid out of any fines and forfeited recognizances collected by them," and that "State's attorneys shall have a lien for their fees, on judgments for fines or forfeitures procured by them for their fees and earnings, until they are fully paid." This provision, in substance, has been embodied in all of the subsequent amendments of said section 8, and it must therefore be regarded as having been continuously in force since 1883. (Hurd's Stat. 1913, chap. 131, sec. 2; *Merlo* v. *Coal and Mining Co.* 258 Ill. 328; *People* v. *Cairo, Vincennes and*

*Chicago Railway Co.* 265 id. 634.)    The various statutes under which the claimants other than the Wayman estate and the county superintendent of schools claim portions of the fund were all passed subsequent to 1883, and in order to hold that their claims (except the claims of the trustees of the various police pension funds) take precedence over the claim of the Wayman estate, it would be necessary to hold that the acts under which they claim were so repugnant to the provisions of said section 8 that those acts could not operate together with said section 8. (*Hoyne* v. *Danisch,* 264 Ill. 467.)    Such, however, was not the case.   The interest of the State's attorney in the fines and penalties collected by him is in the nature of a lien, and it might not be necessary for him to divert to the payment of his fees and commissions any of the moneys derived from fines and penalties imposed under such subsequent acts.   Section 8 can therefore operate together with the subsequent acts, and it will consequently not be presumed that the legislature, by adopting the subsequent acts, intended to repeal the provisions of section 8 of the Fees and Salaries act giving State's attorneys the right to apply any fines and penalties collected by them to the payments of their uncollected fees.   Such, in effect, was our holding in *Galpin* v. *City of Chicago, supra.*

So far as the fines collected for the violation of park ordinances since July 1, 1911, are concerned, as it was not the duty of the State's attorney either to prosecute the cases in which such fines or penalties were imposed or to enforce the collection of such fines and penalties, he had no right, under said section 8, to have the moneys derived from such fines or penalties applied towards the payment of his uncollected fees, and his estate is not entitled to any portion of the fund derived from such fines or penalties.

After awarding to the city of Chicago $5272.32 and to Hale Gossart $75 of the fund, and to the boards of trustees of the various police pension funds all that por-

tion of the fund collected since July 1, 1911, from fines or penalties imposed for the violation of park ordinances, and the interest received thereon by the clerk of the municipal court, the decree of the circuit court should have awarded to Elizabeth C. Wayman, as administratrix of the estate of John E. W. Wayman, so much of the fund as is necessary to satisfy the claim for uncollected fees of John E. W. Wayman, as State's attorney. Wayman had a vested interest in this fund at the time of his death, and upon his death the same passed to his personal representative. The case of *Galpin* v. *City of Chicago, supra,* controls with reference to the disposition of the remainder of the fund. The various claimants under the Truancy act, the Motor Vehicle act, the Pharmacy act, the Dentistry act, the Employment Offices and Agencies act and the Game act have equal rights to the balance of the principal of the fund remaining after the claim of the Wayman estate has been satisfied, and as such balance will not be sufficient to satisfy their claims in full, it should be prorated among them in accordance with their respective claims.

A controversy exists between the city of Chicago and the superintendent of schools as to the validity of section 57 of the Municipal Court act, which provides that all moneys collected upon judgments of the municipal court in criminal and *quasi* criminal cases shall be paid to the clerk, who shall first apply the same to the payment of the uncollected costs in criminal and *quasi* criminal cases. The claim of the city under this section of the Municipal Court act is subordinate to that of all other claimants herein except the superintendent of schools, (*Galpin* v. *City of Chicago, supra,*) and as the fund will be entirely consumed in satisfying the demands of claimants whose claims are superior to that of the city, there will be no portion of the fund upon which this section can operate.

It will therefore not be necessary to consider the validity of said section 57 of the Municipal Court act.

With reference to the interest which accumulated in the hands of the clerk of the municipal court upon the moneys derived from fines and penalties, it should be divided into parts proportionately the same as the principal and distributed accordingly among those claimants found to be entitled to the principal. *Galpin* v. *City of Chicago, supra.*

The county of Cook urges that if we determine that the Wayman estate is entitled to that portion of the fund necessary to satisfy the claim of the State's attorney for uncollected fees, the $38,400 paid to Wayman by the county as a salary during his term of office should be deducted from that portion of the fund awarded to the Wayman estate and should be ordered re-paid to the county. The Wayman estate contends that as Wayman during his term of office paid into the county treasury, from fees collected by him, a sum in excess of the amount paid him as salary, the county has no claim upon this fund or against the Wayman estate for any portion of the moneys paid Wayman as salary, and that in any event the question can not be determined in this suit. If, as contended by the county, it has a valid claim against the Wayman estate for the salary paid to Wayman under an invalid law, notwithstanding the fact that Wayman under the same law paid a larger sum to the county, it is strictly a legal claim, which can be enforced against his estate. The relief sought by the county in this respect cannot be awarded in this suit, the only question here being, "Who is entitled to the identical property brought into court?" *Dyas* v. *Dyas*, 231 Ill. 367.

The decree of the circuit court is reversed and the cause is remanded to that court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*