(No. 14709.—Reversed and remanded.)

OTTO L. PITSCH, Appellant, vs. THE CONTINENTAL AND COMMERCIAL NATIONAL BANK OF CHICAGO, Appellee.

*Opinion filed October 21, 1922—Rehearing denied Dec. 12, 1922.*

1. APPEALS AND ERRORS—*when Appellate Court may allow filing of appeal bond after expiration of twenty days.* Where the Appellate Court has certified a cause for appeal and the appellant fails to file his bond within the twenty days fixed for filing, the court may, provided the term has not expired, enter an order, after the expiration of the twenty days, permitting the bond to be filed instanter, as the court has not lost jurisdiction of the cause and has power to extend the time during the term.

2. OFFICES—*notary is public officer whose fees are fixed by statute.* A notary public is a public officer recognized by the commercial law of the world, and the fees of his office are fixed by statute.

3. FEES AND SALARIES—*contract fixing fees of public officer contrary to statute is void.* A contract whereby a public officer whose compensation is fixed by statute agrees to accept for his official services something different from that provided by statute is contrary to public policy and void notwithstanding the officer receives all he contracts for, as the compensation of a public official for the performance of his official duties is not a matter for traffic or trade, and every person for whom such services are rendered is entitled to receive them at the same price.

4. CONTRACTS—*when plaintiff's action is not precluded because he is party to an illegal contract.* The doctrine that the court will not aid either party where both are *in pari delicto* in regard to an illegal contract does not preclude a plaintiff's action where he can make out his case otherwise than through the medium and by the aid of the illegal transaction to which he was a party.

5. BANKS—*when notary employed by bank is not estopped to sue for his fees.* A notary who is employed by a bank to protest its commercial paper for a compensation less than the fees allowed by statute and based on a certain per cent of said fees, which were paid in full to the bank, is not estopped to sue the bank for the remainder of the fees due him by the fact that every two weeks he signed the same contract for employment with the bank on the same terms and for the same illegal consideration.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

JOHN W. ELLIS, and ALBERT E. BEATH, (JOHN A. BLOOMINGSTON, and WILLIAM F. STRUCKMANN, of counsel,) for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, (ABRAHAM MEYER, and DAVID F. ROSENTHAL, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Appellate Court for the First District affirmed a decree of the circuit court of Cook county which dismissed for want of equity a bill filed by Otto L. Pitsch against the Continental and Commercial National Bank of Chicago for an accounting. The judgment of affirmance was entered on March 7, 1922, at the March term of the Appellate Court, and on March 24 the court, upon petition of the appellant, certified that the cause involved questions of law of such importance on account of principal and collateral interests involved that it should be passed upon by the Supreme Court, and at the same time ordered that an appeal be allowed on condition that the appellant file an appeal bond within ten days. An appeal bond was not filed within ten days, but on April 17, 1922, still in the March term of the Appellate Court but twenty-four days after the order allowing the appeal, a motion by the appellant for leave to file an appeal bond instanter was allowed and an appeal bond in accordance with the order of the court was presented, approved and filed. The appellee did not move to dismiss the appeal, but in the brief filed argued that this court had no jurisdiction of the appeal for the reason that the appeal bond should have been filed within twenty days after the granting of the appeal, that the court was without power to approve the appeal bond on April 17, 1922, and that its order purporting to do so was a nullity. Disregarding the question whether an objection to the court's jurisdiction of the appeal can be raised in this manner when the objection does not go to jurisdiction of the subject matter,

section 92 of the Practice act provides that appeals shall be prayed for and allowed at the term at which the judgment, order or decree is rendered, and that the appellant shall file a bond within such time, not less than twenty days, as the court shall fix. The appellee contends that the time limited for the filing of the appeal bond having been fixed at ten days, the appellant was required to file an appeal bond at farthest within the twenty days mentioned in the statute, and that an order extending the time for filing a bond could be made only before the expiration of the twenty days. The case of *Hill* v. *City of Chicago,* 218 Ill. 178, is cited in support of the last proposition. In that case an order allowing an appeal at the February term of the county court fixed the time for filing the bond at thirty days from the date of the order, February 28. The time expired on March 30, after the expiration of the February term. No bond was filed within the time, but on March 31 a bond was approved by the judge and filed with the clerk, and it was held that the court was without power to extend the time and the right of appeal was lost by failure to comply with the condition. In this case the term at which the decree was entered and at which the statute authorized an appeal to be allowed was still continuing. The court had not lost jurisdiction of the cause, and the order approving the filing of the appeal bond and permitting it to be filed was in effect an extension of the time for filing the bond, which was within the power of the court, and this court has jurisdiction of the appeal.

The appellant was a notary public, who was employed from October 1, 1911, to December 31, 1918, by the appellee in protesting commercial paper for the appellee and its correspondents, and during that period devoted his time exclusively to such services. Previous to entering the appellee's service a written contract was executed between the appellant and the appellee by which the appellant agreed to act as a notary in the matter of protesting commercial paper

whenever required by the appellee, for which services the appellee agreed to pay him twelve and a half per cent of all protest fees received by it on commercial paper protested at its bank, whether protested by the appellant or some other notary. During all the time from October 1, 1911, to December 31, 1918, the appellee delivered to the appellant and another notary public, who received the same compensation, all such checks, notes, drafts and bills of exchange as required protest and they made protest of such instruments. This work required all the time of the appellant and was done on the premises of the appellee, which furnished to the appellant desk room, records, stationery, telephone service and everything used in his notarial work except his official seal. The appellee collected all the fees for notarial services rendered. Twice a month during the appellant's service the appellee had a settlement with the appellant and paid to him twelve and a half per cent of the fees which it had collected, retaining eighty-seven and a half per cent. The bill was filed on February 10, 1919. The defendant set up the Statute of Limitations as a defense to all moneys received prior to February 10, 1914, and as to the residue answered that on the 29th day of July, 1913, and on the fifteenth day and the last business day of each succeeding month thereafter up to and including December 31, 1918, the appellant executed and delivered to the appellee a series of instruments in writing all to the same effect and identical in words and figures except dates, whereby the appellant on such dates forever released and discharged the appellee from all claims up to the date of execution and delivery, and assigned to the appellee all sums due on the date of the execution and delivery of such instruments for fees earned as notary up to those respective dates. The following is a copy of one of such instruments:

"Received from Continental and Commercial National Bank of Chicago, on the respective dates below indicated, the sums due me in full payment and satisfaction for all services rendered by me for said bank and all claims I may have or ever had against it up

to and including such dates; and in consideration of the agreement by said bank to continue me in its employ at the same compensation for the next succeeding half month, to perform like services as those heretofore performed by me, and for other good and valuable considerations, I hereby release and discharge said bank from all claims and demands of every kind or nature which I had or might have against it up to and including said dates, and I hereby assign, transfer and set over to said bank all sums of money now due or owing to me from said bank for fees earned as a notary public in the half month preceding the respective dates set opposite my name.

1913

| | |
|---|---|
| July 29, O. L. Pitsch. (Seal) | Oct. 15, O. L. Pitsch. (Seal) |
| Aug. 15, O. L. Pitsch. (Seal) | Oct. 31, O. L. Pitsch. (Seal) |
| Aug. 28, O. L. Pitsch. (Seal) | Nov. 15, O. L. Pitsch. (Seal) |
| Sept. 15, O. L. Pitsch. (Seal) | Nov. 30, O. L. Pitsch. (Seal) |
| Sept. 30, O. L. Pitsch. (Seal) | Dec. 15, O. L. Pitsch. (Seal) |
| | Dec. 31, ............ (Seal)" |

A separate instrument appears for each of the years from 1914 to 1918 inclusive, each bearing twenty-four signatures and twenty-four dates, being the fifteenth and the last days in each month. The appellee relies upon these instruments as an accord and satisfaction between the parties on the date of each instrument for the notarial fees claimed in the bill.

The claim of the appellant is for money had and received to his use by the appellee for notarial services rendered by the appellant. It is based upon his statutory right to the fees. The defense is not payment but an accord and satisfaction, whereby the defendant twice each month during the five-year period within the Statute of Limitations accepted payment of one-fourth of the amount of his fees which the appellee had collected, in satisfaction of the full amount. (The proportion of the fees earned is really one-fourth instead of one-eighth, because in addition to one-eighth of his own fees he also received an amount equal to one-eighth of what the other notary earned.) In connection with the receipt for the money paid each time was included a release and discharge of all claims against the appellee to the date of signing and an assignment of all

sums due from the appellee for fees earned as a notary public in the half month preceding such date. The mere receipt by the appellant of a part of the money which the appellee had collected for his services and held for him was no consideration for the release of all claims against the appellee and the assignment to it of all sums due from it for fees earned as a notary public in the preceding half month. The instrument, therefore, recited as the consideration for the release and assignment the agreement by the appellee to continue the appellant in its employ at the same compensation for the next succeeding half month to perform like services as those theretofore performed and for other considerations. No other consideration appears than the appellee's agreement to continue the appellant in its employ to perform like services as theretofore performed for the same compensation,—that is, twelve and a half per cent of the legal fees and the conveniences and service theretofore furnished him. The answer of the appellant to this defense is that the transaction was an agreement with a public officer for the performance of official services, the compensation for which was fixed by the agreement at a rate lower than the statutory rate, which is contrary to public policy and will not be enforced.

A notary public is a public officer recognized by the commercial law of the world. (*Pierce* v. *Indseth,* 106 U. S. 546.) The fees of his office are fixed by statute. (Hurd's Stat. chap. 53, sec. 28.) The appellant's employment by the appellee was for the rendering of official services and he rendered no other services. The amount to which he was entitled for such services was fixed by statute and the amount collected for those services was received by the appellee. This amount belonged to the appellant, yet the appellee retained the greater part of the money for itself.

The proposition that a contract whereby a public officer whose compensation is fixed by statute agrees to accept for his official services something different from that provided

by statute is contrary to public policy and void seems to be well supported by authority as well as justified in principle. (*Gilman* v. *D. V. R. Co.* 40 Iowa, 200; *Bodenhofer* v. *Hogan,* 142 id. 321; *Gallaher* v. *City of Lincoln,* 63 Neb. 339; *Abbott* v. *Hayes County,* 78 id. 729; *Ohio Nat. Bank* v. *Hopkins,* 8 App. Cas. (D. C.) 146.) The compensation of a public official for the performance of his official duties is not a matter for traffic or trade, for bargaining or for favoritism. Every person for whom such services are rendered is entitled to receive them at the same price. Official morality and public policy alike prohibit the undermining of the public service by permitting officers to make merchandise of their official services. The appellee has not contested this proposition but insists that it is not involved in the case. It bases its defense upon the proposition that fees or salary which have been earned may be assigned, or the officer may waive his claim to them or estop himself from claiming them. The appellant admits that an officer may assign fees which have been earned, but insists that this proposition is not involved in the case. The question of first importance to be determined, therefore, is the effect of the written instruments executed semi-monthly by the appellant during the time of his employment by the bank. On their face each is a receipt and a release of the appellee from all claims and an assignment to the appellee of all sums of money due from the appellee for fees earned as notary public in the half month preceding the particular date. The consideration of the release and assignment is stated to be the agreement of the appellee to continue the appellant in its employ at the same compensation for the next succeeding half month to perform like services as those theretofore performed and for other good and valuable considerations. There is no doubt about the compensation of the appellant. At the time each one of the instruments was signed he received one-eighth of all the protest fees received by the appellee on all commercial paper protested at the

bank. That was his agreed compensation during all the time he was in the appellee's employ. The appellee regarded him only as an employee, to whom a salary fixed at a percentage of his legal fees was paid and to whom a place of work was assigned, supplies and telephone service were furnished and a bonus was paid as to other employees. For the value of these things it is proper that he should account as a part of his compensation, but the whole matter of fixing his compensation for official services by private contract when it had already been fixed by law was contrary to public policy and the contract was therefore void. It may be true, as appellee's counsel state, that the appellant received the full consideration for which he contracted,—all he bargained for,—but the policy of the law forbids the appellant and the appellee to bargain about this subject matter. It is not a case of several promises or a promise to do several things in which the lawful can be separated from the unlawful, but the whole contract is unlawful. The sole consideration for the release and assignment was the illegal contract to continue the appellant's employment at the same compensation, and that contract was illegal *in toto* and void. The appellant could not insist upon its performance and was not bound by it.

The appellant's suit is not based upon this contract. He makes no claim under it and it is not essential to or any part of his case. His claim is for money received by the appellee to his use. His services were rendered at the request of the appellee, which collected from its correspondents the amount of his fees, and it is for these fees he sues. The appellee claims that if the semi-monthly releases and assignments were illegal the parties are *in pari delicto* and the law will not aid either but will leave them where it finds them. The doctrine does not apply to this case, for the test for determining whether or not the objection that the plaintiff and defendant were *in pari delicto* can be sustained is by considering whether the plaintiff can make out

his case otherwise than through the medium and by the aid of the illegal transaction to which he was himself a party. Broom's Legal Maxims, 567; *Ohio Nat. Bank* v. *Hopkins, supra.*

It is argued that the appellee gave the appellant the commercial paper to protest only because of the contract; that the fees collected, after paying to the appellant his proportion, became a part of the assets of the appellee, were credited to its profit and loss account and formed a basis for declaring dividends; that these things would not have occurred but for the contract and that they constitute an estoppel against the appellant, whose acquiescence in the semi-monthly settlements was relied and acted upon by the bank. There was no estoppel. The contract was illegal and could not become legal by long continuance or by acquiescence or by frequent renewal. The violation of public policy did not cease to be a violation because of its frequent occurrence. Not only was the contract of the appellant illegal, but the appellee knew it was illegal and in spite of such knowledge renewed it twice a month for several years.

Counsel for the appellant say that the appellant assigned to the appellee the fees and salary he had earned in the prior time he had been employed by the appellee and the appellee re-employed him in reliance upon this assignment. Why was such care taken to give the appellant's employment this form,—a new employment every two weeks? That is not the usual method of employment in the service of banks. The appellant was employed every two weeks at the same compensation, which was not the compensation fixed by law. The fact that he accepted every two weeks an amount which was less than the amount due him and without consideration other than another contract of employment void because based upon the same illegal consideration could not estop him from claiming the remainder of the amount due.

The semi-monthly settlements between the parties did not amount to a waiver by appellant or an estoppel against

305—18

him, for the receipt of a part of the amount due him is not a satisfaction of the whole debt unless made and received upon a new and lawful consideration.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause remanded.

*Reversed and remanded.*