People of the State of Illinois ex rel. C. E. Northrup
et al., Appellees, v. City Council of the City of
Chicago et al., Appellants.

Gen. No. 41,406.

Opinion filed January 22, 1941.

BARNET HODES, Corporation Counsel, for appellants;
FRED V. MAGUIRE and WALTER V. SCHAEFER, Assistant Corporation Counsel, of counsel.

JAMES W. BREEN, of Chicago, for appellees.

Mr. Justice Denis E. Sullivan delivered the opinion of the court.

Defendants bring this appeal from a judgment entered in the circuit court in favor of plaintiffs who sought the issuance of a writ of mandamus to compel the City of Chicago to appropriate and pay to the plaintiffs additional compensation for services rendered by them as members of the city council during the years 1932, 1933, 1934 and 1935. An appeal was taken to the Supreme Court of this State, as it was claimed a construction of the constitution was involved. The Supreme Court, after due consideration of the cause, transferred it to this court.

The cause was submitted to the trial court for a decision upon an amended petition for mandamus, an amended answer, an amended reply and a stipulation of facts. No question arises upon the pleadings.

The facts show that the original plaintiffs were thirteen individuals who served as aldermen of the City of Chicago during varying portions of the period from January 1, 1932 to December 1, 1935; that by an amended petition filed August 11, 1939, three additional living ex-aldermen (one of whom had served as chairman of the committee on finance of the city council), and the administrators of the estates of seven deceased aldermen, all of whom had also held office during varying portions of the period from January 1, 1932, to December 1, 1935, were added as parties plaintiff.

The facts further show that prior to January 1, 1930, the city council of the City of Chicago, passed an ordinance fixing the salaries of members of the city council at $5,000 per annum; that this ordinance has never been expressly repealed; that prior to January 1, 1930, the city council also passed an ordinance fixing the salary of the member of the city council who served as chairman of the committee on finance at

$8,500 per annum; that this ordinance likewise has never been expressly repealed.

The facts further show that the period here involved extended from 1932 to 1935, which was a period of financial distress of world wide proportions; that in order to maintain the credit of the City of Chicago and to alleviate so far as possible the burden of taxation imposed upon its citizens, it was necessary to reduce drastically the expenditures of the city; that by the appropriation ordinances adopted by the city council for each of the years 1932, 1933, 1934 and 1935, reduced amounts were appropriated for the essential services of the city government and for the salaries of all the officers and employees of the City of Chicago, and that by reason of these appropriation ordinances amounts less than $5,000 per year were appropriated for the salaries of aldermen.

The deceased aldermen, as well as the living ex-aldermen, are for convenience, herein described as "plaintiffs," as each was a member of the city council of the City of Chicgo when the appropriation ordinances for the years with which he is concerned were respectively adopted.

It appears that the plaintiffs, Mills and Feigenbutz, voted against the passage of the appropriation ordinance for the year 1932; that with this exception, each of the plaintiffs voted in favor of the adoption of each of the appropriation ordinances; that during all of the time the plaintiffs were members of the city council of the City of Chicago no effort was made by the plaintiffs, or by any of them, to bring about the appropriation of money to pay the salaries now claimed by them; that for each of the years 1932, 1933, 1934, 1935, 1936, 1937, 1938 and 1939, the city council of the City of Chicago levied taxes upon all the taxable property in said city at the maximum rate permitted by law; that each of the plaintiffs was paid the total amount appropriated for his salary for each

of the years in question in monthly instalments, and accepted each monthly payment so made during the entire period in question.

It further appears that on May 26, 1937, the plaintiffs caused to be served on the city council a demand that an appropriation be made sufficient in amount to pay to each of the plaintiffs a sum of money which, together with the amounts already received by each of the plaintiffs, would equal the sum of $5,000 per year for the respective periods during which each of the plaintiffs served as a member of the city council, and sufficient to pay to the plaintiff who served as chairman of the committee on finance, together with the amounts already received by him, the sum of $8,500 per year during the time he occupied that position.

Plaintiffs base their right to recover on that portion of section 11 of Article IX of the constitution which provides:

"The fees, salary or compensation of no municipal officer who is elected or appointed for a definite term of office, shall be increased or diminished during such term."

Defendants contend that this constitutional provision, properly construed, is not applicable to the claims advanced by the plaintiffs. Their defenses are estoppel, laches, limitations and gift to defendant City by plaintiffs.

The trial court found, under the stipulated facts, that it was the duty of the city council according to the provisions of the constitution to appropriate $5,000 for the annual salary of each of the plaintiffs as aldermen for each of the years 1932, 1933, 1934 and 1935, and to appropriate $8,500 for the annual salary of the plaintiff who served as chairman of the committee on finance of the city council for the period during which he occupied that position. The trial court further found that the amounts set forth in the

judgment order were due to the respective plaintiffs for services as members of the city council and as chairman of the committee on finance, and directed the issuance of a writ of mandamus to compel the city council to appropriate for said purposes the sum of $55,000 and to compel other officers of the city to pay to the plaintiffs the amounts respectively found due to them.

Defendants, who are the appellants here, apparently proceed on the theory that section 11 of Article IX of the constitution of Illinois does not justify the action taken by the trial court in entering judgment in favor of plaintiffs and that the action of the plaintiffs in not claiming the money prior to their demand and as members of the city council, received less without protest and, therefore, plaintiffs ''effected a gift to the City of Chicago of the difference between the sums of money actually paid to each of the plaintiffs as salary and the sum which would have been paid to the respective plaintiffs had they been compensated at the rate of $5,000 per annum for aldermen, and $8,500 per annum for the alderman who served as chairman of the committee on finance.''

Defendants further contend that the court erred in not holding that the claims of all the plaintiffs are barred by laches and that the claims of others of the plaintiffs are barred by the statute of limitations.

Defendants further contend that a grave emergency having arisen, namely, the financial depression which commenced with the last decade, that such emergency would permit the construction of the constitutional provision which would meet such an emergency. In the case of *People ex rel. Northrup v. City of Chicago,* 374 Ill. 94, Mr. Justice MURPHY of the Supreme Court who wrote the opinion transferring this cause to this court, referred to the case of *People ex rel. Lyle v. City of Chicago,* 360 Ill. 25, and said:

"In that case it was held that where a law, either by express provision or necessary implication, provides for an emergency, departure from its terms is permissible to accommodate the law to the emergency, but the justification for such departure must be found within the law and does not arise from the emergency." There are no words in section 11 of Article IX which make any reference, either directly or by implication, to the subject of an emergency. So, consequently, any of the purposes however commendable which the city authorities may have had in mind, in an endeavor to reduce expenses and save money for the taxpayers, would not be applicable in the instant case as the salaries were fixed by law at $5,000 and $8,500, as has been set forth. In other words, an emergency cannot be created by the facts and used as a means of construction of a constitutional provision which has made no reference to any emergency by its terms.

In the case of *People ex rel. Lyle v. City of Chicago,* 360 Ill. 25, wherein the court at page 29, in discussing a similar case, said:

"Legitimate methods of relieving the situation are commendable, and where the law, either by express provision or by necessary implication, provides for an emergency departure from its terms, it is permissible to accommodate the law to such emergencies, but in order to justify such a departure the justification must be found within the law. It does not arise from the emergency, but, as existing under the law, is applied when the emergency happens. (*Home Building and Loan Ass'n v. Blaisdell,* 290 U. S. 398, 78 L. ed. 413.) Neither the legislature nor any executive or judicial officer may disregard the provisions of the constitution even in case of a great emergency. In providing that the salary of no judge of the municipal court shall be changed during the term for which he

is elected the legislature followed the constitutional provision. Neither instrument contains anything that expressly or impliedly limits the prohibition but their terms are plain and unequivocal. They therefore present no question of construction as to departures in emergencies. *Home Building and Loan Ass'n v. Blaisdell, supra.*

"Relators are corporate authorities, and hence are municipal officers within the meaning of the constitution. (*People v. City of Chicago,* 310 Ill. 534.) Under its terms the city council was without authority to change relators' salaries during the respective terms for which they were elected. *People v. Sweitzer,* 280 Ill. 436; *Foreman v. People,* 209 id. 567."

Plaintiffs in the present case were members of the city council and it is charged they took no steps to compel the city council to appropriate for these salaries. There is no showing here as to what this minority of members of the city council could have done, even if it were assumed they should have taken some action, nor is any showing made that the City of Chicago was in any way prejudiced by the acts of plaintiffs, nor that defendants were relying upon plaintiffs' action which resulted in loss or injury to the City. As a matter of fact, the action of the aldermen in not taking or insisting upon being paid their full salaries temporarily, was, undoubtedly, beneficial to the City and not detrimental. No fraud or deception on the part of plaintiffs is claimed or proven.

We have been unable to find any decision by the courts of this state upholding any provision that the salary of a duly elected officer may be changed during his term of office, but, on the contrary, the decisions condemn any such attempt.

In *Foreman v. People ex rel. McEwen,* 209 Ill. 567, in discussing the language used in section 10 of Article X, the court at page 573, said:

"Section 10 of article 10, relating to county officers, provides 'that the compensation of no officer shall be increased or diminished during his term of office,' and in *Cullom v. Dolloff*, 94 Ill. 330, it was held to be the intention of this provision that the compensation should be *unalterably* fixed for the official term of the officer."

In *People v. Sweitzer*, 280 Ill. 436, the court at page 444, in discussing the *Foreman* case, said:

"It was further pointed out in that case that while no particular set of words is used in the constitution to express the limitation of the power of the legislature with reference to a change of salary during a term of office, there is a well defined rule running through the whole instrument that a salary attached to any public office having a fixed term shall not be increased or diminished during that term."

The record shows that the terms of the plaintiffs elected as aldermen in 1931 extended to 1933 and the terms of the plaintiffs elected in 1933, extended to 1935; that the general ordinance fixed the salaries of the aldermen at $5,000 a year and the chairman of the finance committee was to receive a salary of $8,500, and this ordinance was in full force and effect during this period of time.

A question very similar to the one involved in the instant case was disposed of in the case of *Galpin v. City of Chicago*, 269 Ill. 27, which involved the State's Attorney of Cook county, who had made a campaign for election and had promised that he would only accept an annual salary of $10,000, and pay all fees to the county, although the law provided that in addition to that salary he should be paid certain fees. He complied with his promise and after he died, his creditors insisted that his estate collect this amount from the county. In disposing of this matter, the Supreme Court in its opinion at pages 41 and 42, said:

"From the stipulation upon which the cause was heard in the circuit court it appears that Wayman stated publicly during his campaign for election in October, 1908, that if elected State's attorney he would accept an annual salary of $10,000 and pay into the county treasury all fees. It further appears that Wayman received from the county treasurer of Cook county, upon warrants drawn by the county comptroller, each of which warrants recited that it was for Wayman's salary as State's attorney, the sum of $800 per month during his term of office, and that during such period he paid to the county treasurer a total of $62,970.75, which sum he reported to the board of commissioners of Cook county represented the fees received by him as State's attorney during his term of office. It is contended by the various parties whose claims conflict with that of the Wayman estate, that by reason of this conduct on Wayman's part his estate is now estopped from claiming any portion of the fund in controversy. With this contention we cannot agree. The fees or salary of an officer having been fixed by law become an incident to the office, and it is contrary to public policy for candidates to attempt to attain such office by promises made to the electors to perform the duties of the office for any other or different compensation than that fixed by law. Such promises being illegal, they cannot be enforced. (*Abbott v. Hayes County,* 78 Neb. 729; *People v. Board of Police,* 75 N. Y. 38.) Whether, as held by some courts of last resort, such conduct on the part of a successful candidate is sufficient to invalidate his election it is not necessary or proper here to determine, as that question could only be properly presented in a proceeding brought against the officer to test his right to office. It cannot be raised where, as here, the officer's term has expired and the controversy concerns only his right to the fees of his office.

"Neither was Wayman estopped from claiming the compensation fixed by statute for his services as State's

attorney. In *Holcomb v. Boynton,* 151 Ill. 294, we said: 'It is a novel idea in the law of estoppel that the doctrine should be applied to a person who has been guilty of no fraud, simply because, under a misapprehension of the law, he has treated as legal and valid an act void and open to the inspection of all. As we understand the doctrine of estoppel *in pais,* it is based upon a fraudulent purpose and a fraudulent result. Before it can be invoked to the aid of a litigant it must appear that the person against whom it is invoked has by his words or conduct caused him to believe in the existence of a certain state of things and induced him to act upon that belief. If both parties are equally cognizant of the facts and one has acted under a mistaken idea of the law, the other party cannot say he has been deceived thereby and is entitled to an application of the rule, but will be considered as having acted upon his own judgment, solely.' To the same effect is *Finch v. Theiss,* 267 Ill. 65.'' Continuing on page 56, the court said: ''. . . the decree of the circuit court should have awarded to Elizabeth C. Wayman, as administratrix of the estate of John E. W. Wayman, so much of the fund as is necessary to satisfy the claim for uncollected fees of John E. W. Wayman, as State's attorney. Wayman had a vested interest in this fund at the time of his death, and upon his death the same passed to his personal representative.''

Another case which held that the doctrine of estoppel did not apply in the absence of fraud is that of *Pitsch v. Continental & Commercial Nat. Bank of Chicago,* 305 Ill. 265. In that case the bank had a clerk who was also a notary public and the bank made a contract with said employee to do the notarial work for the bank, in acknowledgments, protests, etc., but stated that the bank should retain the income therefrom. In disposing of this matter the Supreme Court said:

''The proposition that a contract whereby a public officer whose compensation is fixed by statute agrees to accept for his official services something different from

that provided by statute is contrary to public policy and void seems to be well supported by authority as well as justified in principle. . . . The compensation of a public official for the performance of his official duties is not a matter for traffic or trade, for bargaining or for favoritism. . . . Official morality and public policy alike prohibit the undermining of the public service by permitting officers to make merchandise of their official services." The court continuing at page 273, said: "The fact that he accepted every two weeks an amount which was less than the amount due him and without consideration other than another contract of employment void because based upon the same illegal consideration could not estop him from claiming the remainder of the amount due.

"The semi-monthly settlements between the parties did not amount to a waiver by appellant or an estoppel against him, for the receipt of a part of the amount due him is not a satisfaction of the whole debt unless made and received upon a new and lawful consideration."

So, in the instant case, it was stipulated by the parties hereto that the salary of each alderman was for $5,000 per year, as fixed by law, and that the salary of the chairman of the finance committee was to be for $3,500 in addition to the $5,000, or $8,500, and it is further stipulated that during the period, for which these plaintiffs make claim for their full salaries, there was sufficient money on hand to appropriate and pay these salaries. We do not believe that the acceptance by the aldermen of a lesser sum than that provided by law, should in any way affect their rights to recover the full amount of salary to which each was entitled as provided by law.

It is next contended by defendants that the statute of limitations is a defense to the claim of plaintiffs. We do not find in the pleadings or in the evidence anything in relation to this defense. It is the rule of this court and the law of this State that subject matters

which have not been called to the attention of the trial court will not be considered by this court on appeal. In the case of *Holmes v. First Union Trust & Savings Bank,* 362 Ill. 44, the court at page 49, said: "It is a settled rule of this court that a party will not be permitted to raise objections here which were not urged in the trial court. (*Morey v. Brown,* 305 Ill. 284, 286; *Dacey v. Goll,* 242 id. 606.) This point cannot, therefore, be considered."

In *City of Elmhurst v. Western United Gas & Electric Co.,* 363 Ill. 144, the court at page 148, said: "The point now urged as a denial of due process was not placed in issue before the commission and cannot be raised for the first time in this court. *Petersen Baking Co. v. Bryan,* 290 U. S. 570, 78 L. ed. 505, 510; *Chicago, Milwaukee, St. Paul and Pacific Railroad Co. v. Risty,* 276 id. 567, 72 L. ed. 703, 709."

In the case of *Langan v. Milk's Grove Special Drainage District No. 1,* 239 Ill. 430, the court at pages 438 and 439, said:

"With reference to the Statute of Limitations, it is only necessary to say that this is an action at law and is governed by the rules of pleading applicable to other actions at law. (*Cleary v. Hoobler,* 207 Ill. 97; *Mayor of Roodhouse v. Briggs,* 194 id. 435; *Chicago Great Western Railway Co. v. People,* 179 id. 441.) In such actions the Statute of Limitations cannot be availed of by demurrer but must be specially pleaded, so that the plaintiff may reply any special matter which prevents the bar attaching. *Gunton v. Hughes,* 181 Ill. 132; *Wall v. Chesapeake and Ohio Railroad Co.,* 200 id. 66."

As heretofore stated, the record failing to show that the statute of limitations was raised at the time of the trial, it cannot now be raised here for the first time.

Another defense offered by defendants is that the plaintiffs "effected a gift" to the city and, consequently, they cannot get it back. This is another theory

growing out of the doctrine of estoppel with which defense we have heretofore disposed.

If, as we have stated, the reduction of such salary in any way is against public policy and void, then the making of a gift, which would accomplish indirectly the same result, is rendered nugatory by the constitutional provision. Article IX, section 11 of the constitution. No evidence was produced showing an attempt was made to make a gift. In addition thereto, such gift would be without consideration, even if plaintiffs did have the power to avoid and nullify this provision of the constitution, which they have not. We think the entire defense made to this case is disposed of by a mere reading of the constitutional provisions. The so-called defenses by the city officers, namely, the statute of limitations, laches and gifts, are all contrary to the constitution and public policy of the State, and cannot be sustained. Such defenses, as we have shown, if sustained, would create a situation equivalent to avoiding the constitutional mandate.

The city council and its officers having refused to make the appropriation necessary to pay the salaries of plaintiffs as provided by law and demand having been duly made, should be compelled at plaintiffs' instance, by mandamus, to do as the law provides.

For the reasons herein given the judgment of the circuit court is hereby affirmed.

*Judgment affirmed.*

HEBEL, P.J., and BURKE, J., concur.