**2022 IL 127239**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127239)

MICHAEL NOLAND *et al*., Appellees and Cross-Appellants, v.
SUSANA A. MENDOZA, in Her Official Capacity as Comptroller
of the State of Illinois, Appellant and Cross-Appellee.

*Opinion filed September 22, 2022.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Theis, Michael J. Burke, Overstreet,
and Carter concurred in the judgment and opinion.

Justice Holder White took no part in the decision.

**OPINION**

¶ 1    Michael Noland and James Clayborne (collectively, plaintiffs) are former
members of the General Assembly who voted for a series of laws that reduced
legislators' salaries (Salary Reduction Laws). After leaving office, plaintiffs filed

an action alleging that the reductions violated article IV, section 11, of the Illinois Constitution (Legislative Salary Clause) (Ill. Const. 1970, art. IV, § 11). Plaintiffs were seeking a writ of *mandamus* compelling defendant, Susan A. Mendoza, the Comptroller of the State of Illinois, to pay them and all affected legislators their disputed salaries. Defendant asserted the affirmative defenses of waiver, *laches*, and violation of the statute of limitations. The parties filed cross-motions for summary judgment, and the Cook County circuit court found that the affirmative defenses of *laches* and waiver failed as a matter of law and that the statute of limitations defense lacked merit. The court also found that, although plaintiffs were entitled to relief for themselves, they could not obtain relief on behalf of nonparty legislators. The court found that the laws at issue were facially unconstitutional and entered partial summary judgment for plaintiffs, ruling that they were entitled to *mandamus* relief against defendant on their claims seeking payment of their disputed salaries. The court then made findings under Illinois Supreme Court Rule 18 (eff. Sept. 1, 2006), and defendant appealed. Because the circuit court's judgment invalidated a statute of the State of Illinois, the appeal was taken directly to this court pursuant to Illinois Supreme Court Rule 302 (eff. Oct. 4, 2011). For the reasons that follow, we reverse the judgment of the circuit court.

¶ 2                                    I. BACKGROUND

¶ 3        The following facts are undisputed. Under the Compensation Review Act (Compensation Act) (25 ILCS 120/1 *et seq.* (West 2008)), the Compensation Review Board recommends salaries for various state officials, including members of the General Assembly. In 1990, the board recommended that the salaries of various state officials, including members of the General Assembly, be subject to annual cost-of-living adjustments (COLAs). And the General Assembly approved that recommendation.

¶ 4        Following the severe recession that began in 2007, the General Assembly passed a series of laws that reduced its members' salaries by eliminating the COLAs and requiring all legislators to take unpaid furlough days. The initial Salary Reduction Laws were enacted into law in 2009, after being passed by the vote of at least three-fifths of the members elected to each house of the General Assembly.

¶ 5                                  A. Salary Reduction Laws

¶ 6          The General Assembly enacted Public Act 96-800 (eff. Oct. 30, 2009), which
eliminated the COLAs that legislators were entitled to for the fiscal year running
from July 1, 2009, to June 30, 2010. The COLA-elimination law provided, in
relevant part, that members of the General Assembly were prohibited from
receiving

> "any increase in compensation that would otherwise apply based on a cost of
> living adjustment, as authorized by Senate Joint Resolution 192 of the 86th
> General Assembly, for or during the fiscal year beginning July 1, 2009." 25
> ILCS 120/5.6 (West 2010) (added by Pub. Act 96-800, § 35 (eff. Oct. 30,
> 2009)).

In each of the following years through 2019, the General Assembly passed similar
laws, eliminating COLA increases for its members.[1]

¶ 7          In addition to the suspension of the COLAs, the General Assembly enacted
Public Act 96-45 (eff. July 15, 2009), which mandated that members of the General
Assembly were required to forfeit 12 days of compensation for the fiscal year July
1, 2009, to June 30, 2010. The law mandating that legislators take furlough days
provided in relevant part:

> "During the fiscal year beginning on July 1, 2009, every member of the General
> Assembly is required to forfeit 12 days of compensation. The State Comptroller
> shall deduct the equivalent of 1/261 of the annual compensation of each
> member from the compensation of that member in each month of the fiscal

---

[1]The Public Acts suspending COLAs and the corresponding amendments to the Compensation
Act are as follows: Pub. Act 96-958, § 35-5 (eff. July 1, 2010); Pub. Act 97-71, § 10 (eff. June 30,
2011); Pub. Act 97-718, § 10 (eff. June 29, 2012); Pub. Act 98-30, § 10 (eff. June 24, 2013); Pub.
Act 98-682, § 60 (eff. June 30, 2014); Pub. Act 99-355, § 10 (eff. Aug. 13, 2015); Pub. Act 99-523,
art. 5, § 5-8 (eff. June 30, 2016); Pub. Act 100-25, § 10 (eff. July 26, 2017); Pub. Act 100-587, § 70-
10 (eff. June 4, 2018).

year." 25 ILCS 115/1.5 (West 2010) (added by Pub. Act 96-45, § 5-26 (eff. July 15, 2009)).

In each of the following years through 2014, the General Assembly passed similar laws, mandating furlough days for its members.[2]

¶ 8    Noland, who served in the Illinois Senate from January 2007 until January 2017, was a cosponsor of the laws and routinely voted for them. Declaring his support for the laws, Noland publicly stated that "most working families in Illinois are not seeing raises" and "the least we can do is cut our own pay."

¶ 9                    B. Complaint and Other Court Filings

¶ 10    Several months after leaving office in 2017, Noland filed this action alleging that the Salary Reduction Laws violated the Legislative Salary Clause of the Illinois Constitution. Article IV, section 11, of the Illinois Constitution provides:

"A member shall receive a salary and allowances as provided by law, but changes in the salary of a member shall not take effect during the term for which he has been elected." Ill. Const. 1970, art. IV, § 11.

¶ 11    Noland sued in his "official capacity as a former member of the Illinois Senate" and requested similar relief for other members of the General Assembly who had not joined the suit as plaintiffs. He named Comptroller Susana A. Mendoza as defendant.

¶ 12    Defendant moved to dismiss the action, asserting that Noland lacked standing to seek relief in his "official capacity" as a former senator. The circuit court agreed, stating: "plaintiff, in our case, cannot bring this case in his official capacity. He no longer is a member of the Illinois Senate. And as such, he cannot sue as a public official or represent the Senate."

_____

[2]The Public Acts imposing furlough days and the corresponding amendments to the General Assembly Compensation Act are as follows: Pub. Act 96-958, § 5-10 (eff. July 1, 2010); Pub. Act 97-71, § 5 (eff. June 30, 2011); Pub. Act 97-718, § 5 (eff. June 29, 2012); Pub. Act 98-30, § 5 (eff. June 24, 2013).

¶ 13    With leave of court, Noland filed an amended complaint in which he sued in his individual capacity and added as a plaintiff James Clayborne—who was still serving in the Senate but had announced that he would not seek reelection—both in his individual capacity and in his official capacity as a member of the Illinois Senate. Counts I to IV of the amended complaint sought a declaratory judgment that the Salary Reduction Laws suspending COLAs mid-term and imposing unpaid furlough days for Noland and Clayborne violated the Legislative Salary Clause, were facially unconstitutional, and were void *ab initio*. Counts V and VI sought *mandamus* relief requiring defendant to pay their disputed salaries and an order requiring defendant to make these payments to plaintiffs and all other members of the General Assembly affected by the Salary Reduction Laws.

¶ 14    Defendant moved to dismiss the action, arguing that the Legislative Salary Clause only prohibited increases, ss reductions, in legislators' salaries. The circuit court denied the motion and ordered defendant to file an answer. Defendant answered, denying plaintiffs were entitled to a declaratory judgment or *mandamus* relief. She further alleged as an affirmative defense that Clayborne—who was not running for reelection and whose term of office would soon expire—lacked standing to sue in his official capacity.

¶ 15    Plaintiffs moved for partial summary judgment on their claims for declaratory relief (counts I to IV). Defendant filed a cross-motion for summary judgment on all claims.

¶ 16                           C. Circuit Court Proceedings

¶ 17    After briefing, the circuit court granted defendant's motion to the extent that it challenged Clayborne's standing to sue in his official capacity. The court also granted plaintiffs' motion for partial summary judgment on Counts I to IV, holding that the Legislative Salary Clause prohibits mid-term changes, whether decreases or increases, in legislators' salaries during their terms in office.

¶ 18    The court held that plaintiffs' constitutional challenge to the Salary Reduction Laws could not be an as-applied challenge because the court had "not held an evidentiary hearing" and, therefore, found the laws were "facially unconstitutional." Counts V and VI were still unresolved.

¶ 19    Following the ruling, defendant moved for leave to file an amended pleading asserting the affirmative defenses of *laches*, waiver, and violation of the statute of limitations. Plaintiffs opposed the motion, arguing *inter alia* that such an amendment would be "futile" because none of these defenses were legally "viable."

¶ 20    The circuit court permitted defendant to file an amended answer and ruled that she could assert the defense that plaintiffs' claims were barred by the statute of limitations, but waiver and *laches* could not be asserted. The court determined that the defenses of *laches* and waiver were legally insufficient.

¶ 21    Thereafter, defendant filed an amended affirmative defense raising violation of the statute of limitations. To avoid any forfeiture, the pleading noted that the defenses of *laches* and waiver were omitted only because the court disallowed them.

¶ 22    The parties filed cross-motions for summary judgment on plaintiffs' *mandamus* claims, counts V and VI. First, the court found that the Salary Reduction Laws were "facially unconstitutional" and therefore "void *ab initio*." Second, the court found that defendant's statute of limitations defense lacked merit because plaintiffs' *mandamus* counts did not become "ripe" until the court first declared the Salary Reduction Laws unconstitutional. Third, the court found that plaintiffs were entitled to relief for themselves because they were seeking redress in their individual capacities, but they could not obtain relief on behalf of nonparty legislators. Therefore, the court granted plaintiffs' motion for summary judgment, in part, finding that they were entitled to a judgment against defendant on their *mandamus* counts seeking payment of their salaries, and the court ordered defendant to pay plaintiffs' salaries that were withheld under the Salary Reduction Laws in the amounts of $71,507.43 for Noland and $104,412.93 for Clayborne. Finally, the court incorporated its orders in a final judgment that included a finding under Illinois Supreme Court Rule 18 (eff. Sept. 1, 2006).

¶ 23    Defendant filed a timely notice of direct appeal to this Court. Ill. S. Ct. R. 302 (eff. Oct. 4, 2011). Plaintiffs timely filed a cross-appeal regarding the circuit court's judgment denying relief for nonparty legislators. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 24                                    II. ANALYSIS

¶ 25        Defendant argues that the Salary Reduction Laws validly apply to legislative terms beginning after any of the laws took effect; thus, they were constitutional as applied. Defendant also contends that the circuit court erred in denying the application of her affirmative defenses of *laches*, waiver, and violation of the statute of limitations. Defendant specifically maintains that plaintiffs' claims under the Legislative Salary Clause for payments of public funds to them are not claims to enforce public rights but rather private rights subject to affirmative defenses. In addressing plaintiffs' claim for cross-relief, defendant maintains that the circuit court correctly held that plaintiffs may not obtain a judgment that grants relief in favor of nonparty legislators.

¶ 26        Plaintiffs respond that the circuit court correctly held that the Salary Reduction Laws were unconstitutional because they violated the Legislative Salary Clause of the Illinois Constitution. Ill. Const. 1970, art. IV, § 11. Plaintiffs contend that there is no set of circumstances where defendant could comply with the Salary Reduction Laws, agreeing with the circuit court that they are facially unconstitutional. Plaintiffs maintain that the circuit court correctly held that the defenses of *laches* and waiver were unavailable to defendant against plaintiffs' public right to their salaries as set by law. Plaintiffs also maintain that the circuit court did not err when it granted partial summary judgment because they did not violate the statute of limitations, as their *mandamus* claim accrued after the circuit court found the Salary Reduction Laws unconstitutional. In requesting cross-relief, plaintiffs contend that the circuit court erred in holding that they could not obtain relief on behalf of nonparty legislators. Finally, plaintiffs argue that, because they are seeking to enforce a public right that protects the right of the people of Illinois to a legislature free from improper influence, they have standing to seek as an element of relief that defendant comply with the Illinois Constitution and pay all affected members of the General Assembly their disputed salaries. See *id.*

¶ 27                              A. Constitutional Claim

¶ 28 Here, the parties urge us to address the merits of plaintiffs' constitutional claim. We acknowledge this court's long-standing rule that cases should be decided on nonconstitutional grounds whenever possible and that we reach constitutional issues only as a last resort. *In re E.H.*, 224 Ill. 2d 172, 178 (2006). Courts must avoid reaching constitutional issues unless necessary to decide a case. *Id.*; *People v. Hampton*, 225 Ill. 2d 238, 244 (2007); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring, joined by Stone, Roberts, and Cardozo, JJ.) ("if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law," a court must "decide only the latter"). Consequently, because we find that the affirmative defense of *laches* applies and bars plaintiffs' claims, we find it unnecessary to address the question regarding the constitutionality of the Salary Reduction Laws.

¶ 29 B. Standard of Review

¶ 30 The circuit court's decision that defendant's affirmative defense of *laches* was insufficient as a matter of law is reviewed *de novo*. *In re S.L.*, 2014 IL 115424, ¶ 16 (when an issue is raised about the sufficiency of a defense incorporated in a pleading, it presents a question of law which we review *de novo*).

¶ 31 C. *Laches*

¶ 32 *Laches* is an equitable doctrine that precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party. *Tully v. State*, 143 Ill. 2d 425, 432 (1991). *Laches* is an affirmative defense asserted against a party " 'who has knowingly slept upon his rights and acquiesced for a great length of time, [citation] and its existence depends on whether, under all circumstances of a particular case, a plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did.' " *Tillman v. Pritzker*, 2021 IL 126387, ¶ 25 (quoting *Pyle v. Ferrell*, 12 Ill. 2d 547, 552 (1958)). *Laches* turns on " 'the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relation of the property and parties.' " *Id.* (quoting *Pyle*, 12 Ill. 2d at 552). " 'The doctrine is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on

his rights to the detriment of the opposing party.' " *Id.* (quoting *Tully*, 143 Ill. 2d at 432).

¶ 33 Two elements are necessary for the application of *laches*: (1) " 'lack of due diligence by the party asserting the claim' " and (2) " 'prejudice to the opposing party.' " *Id.* (quoting *Van Milligan v. Board of Fire & Police Commissioners*, 158 Ill. 2d 85, 89 (1994)). Whether *laches* applies depends on the facts of each case. *Id.*

¶ 34 1. Plaintiffs' Lack of Due Diligence

¶ 35 a. Plaintiffs Assert a Private Right

¶ 36 Plaintiffs argue that they are suing to establish a public right and that this court should compel defendant to comply with the Legislative Salary Clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 11) and pay them their disputed salaries. Plaintiffs assert that a public officer's right to his salary is not an individual right but rather a public right that attaches to the office and belongs to the citizens of Illinois. Plaintiffs contend that a public officeholder's right to compensation is not based on any personal or contractual rights but rather a constitutional right and that they as individuals cannot forfeit, waive, or gift this right by affirmative action or by delay in seeking to enforce it. We disagree.

¶ 37 Plaintiffs rely on *People ex rel. Northrup v. City Council of Chicago*, 308 Ill. App. 284 (1941), for the proposition that their disputed salary is a public right protected by law, to which they are entitled. We find their reliance on *Northrup* misplaced.

¶ 38 In *Northrup*, plaintiffs, who were serving as aldermen, sought the issuance of a writ of *mandamus* to compel the City of Chicago (City) to pay salary amounts that were withheld between 1932 and 1935 because of salary reduction ordinances enacted by the city council. *Id.* at 285. The plaintiffs argued that, as elected officers, the ordinances resulted in mid-term salary reductions that violated the public right to their salary as set by law and the public policy of the State. *Id.* Numerous plaintiffs had voted in favor of the ordinances, and each of the plaintiffs accepted the reduced salary payments in monthly installments during the entire period from 1932 to 1935. *Id.* at 286-87. The plaintiffs waited several years after the first

ordinance was passed to file suit. *Id.* The City asserted the following as defenses: *laches*, the statute of limitations, and that the withheld salaries were a gift by the plaintiffs to the City. *Id.* at 287. The court rejected the City's defenses as unavailable, as they were contrary to the constitution, and issued the writ of *mandamus*. *Id.* at 287-88.

¶ 39     First, in the case at bar, the flaw in plaintiffs' argument is that they are suing in their individual capacity and not in an official capacity as former members of the Illinois Senate. A claim by a former public official seeking payment of compensation from public funds is the assertion of a private right to protect a personal entitlement, not a public right on behalf of the people or for the benefit of the people collectively. *Murphy v. City of Park Ridge*, 298 Ill. 66, 72 (1921) (finding that the petitioner, who filed in his individual name and not in the name of the people, sought to enforce a private right); 4 William Blackstone, Commentaries *7 (defining public rights as those rights held collectively by the community). Plaintiffs filed in their individual names and not in the name of the people of Illinois, and they sued for the payment of public funds to themselves. Thus, the public has no interest in the collection of plaintiffs' private claims. See *Spokeo, Inc. v. Robins*, 578 U.S. 330, 347 (2016) (holding that public rights are not implicated when private individuals sue to redress violations of their own private rights); *Schenck v. Pro-Choice Network of Western New York*, 519 U.S. 357, 376 (1997) (finding that an individual typically vindicates violations of private rights). Here, we agree with the circuit court that, because plaintiffs are suing in their individual capacity, they are asserting a private right.

¶ 40     Second, courts have determined that claims involving public funds, which are subject to stringent rules governing public budgets, present a compelling case for applying the equitable defense of *laches*. In *Tillman*, this court determined that lack of diligence encompassed the petitioner's 2-year and 16-year delays in bringing his taxpayer actions to restrain the disbursement of public funds, while having notice and knowledge of defendants' conduct and the opportunity to file suit. 2021 IL 126387, ¶¶ 26-27. In *Monson v. County of Grundy*, 394 Ill. App. 3d 1091, 1094 (2009), the appellate court explained that, when the plaintiff files a complaint challenging budget decisions for a fiscal year that has ended, *laches* applies. The appellate court found that the plaintiff's *mandamus* action seeking repayment of public funds was barred by *laches* because he filed suit after the defendant county

approved the budget and the fiscal year at issue had ended. *Id.* at 1095. The court observed that the plaintiff was requesting funds that were no longer available. *Id.*; see also *Solomon v. North Shore Sanitary District*, 48 Ill. 2d 309, 322 (1971) (holding that a delay of over two years before bringing suit, coupled with the expenditure of the funds, required that the plaintiffs' claim be barred by *laches*); *People ex rel. Mulvey v. City of Chicago*, 292 Ill. App. 589, 595-96 (1937) (holding that *laches* applies where there has been years of inaction in asserting a right for public funds which justified the denial of relief); *Maynard v. Board of Education*, 357 S.E.2d 246, 255 (W. Va. 1987) (finding that a party must exercise due diligence when seeking to challenge the legality of a matter involving expenditure of public funds).

¶ 41    Third, we observe that courts have found that a constitutional claim can become time-barred, just as any other claim. *Block v. North Dakota ex rel. Board of University & School Lands*, 461 U.S. 273, 292 (1983) (holding that constitutional claims are subject to becoming time-barred and nothing in the constitution requires otherwise); *Langendorf v. City of Urbana*, 197 Ill. 2d 100, 110-11 (2001) (holding that the need to encourage claimants to investigate and pursue causes of action in order to discourage delay, in time, outweighs the right to litigate a constitutional claim). In addition, courts have found that *laches* can operate as a bar to relief based on a claim that a statute is unconstitutional. *Tillman*, 2021 IL 126387, ¶ 27 (delay in challenging the constitutional claim resulted in the application of *laches*); *Tully*, 143 Ill. 2d at 433-34, (delay in asserting a constitutional challenge for over a year barred by *laches*); *Tolbert v. Godinez*, 2020 IL App (4th) 180587, ¶ 27 (determining that constitutional claims are not precluded from a *laches* defense); *Southside Fair Housing Committee v. City of New York*, 928 F.2d 1336, 1356 (2d Cir. 1991) (holding that the doctrine of *laches* can bar a constitutional claim); *Fundamental Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66, ¶ 45, 289 P.3d 502 (finding that a constitutional claim is subject to *laches*, which indicates that a particular litigant has forfeited a right to complain).

¶ 42    Here, plaintiffs, who are suing in their individual and not in their official capacity, have slept on their rights, and we will not come to the aid of such complainants. See *Tillman*, 2021 IL 126387, ¶ 25; *Tully*, 143 Ill. 2d at 432. Plaintiffs' lack of due diligence in bringing their private claims supports application of *laches*. Consequently, we find that plaintiffs are estopped from bringing their

claims seeking payment of their salaries excluded by the Salary Reduction Laws because of their unreasonable delay in pursuing the action. Finally, to the extent that *Northrup* suggests that *laches* cannot be a viable defense regarding a constitutional claim for a public official's salary, it is now overruled.

¶ 43                       b. Plaintiffs' Acceptance of a Reduced Salary Is
Not Against Public Policy and Precludes Recovery

¶ 44       Plaintiffs, relying on *Galpin v. City of Chicago*, 269 Ill. 27 (1915), and *Pitsch v. Continental & Commercial National Bank of Chicago*, 305 Ill. 265 (1922), contend that this court has determined that the reduction of a public official's salary mid-term is against public policy and void. We do not believe these cases support plaintiffs' position.

¶ 45       In *Galpin*, 269 Ill. at 41, the state's attorney of Cook County made a campaign promise, which he kept after his election, to pay certain money due him back to the county. After he died, his estate sued to recover the amount ceded to the county. *Id.* The court rejected an estoppel defense, finding that it was "contrary to public policy for candidates to attempt to *attain such office* by promises made to the electors to perform the duties of the office for any other or different compensation than that fixed by law." (Emphasis added.) *Id.* The court determined that such promises, being illegal, cannot be enforced. *Id.*

¶ 46       In *Pitsch*, 305 Ill. at 270-71, a notary public agreed to accept for his official services something different from that provided by statute. The amount to which the notary public was entitled was received by the bank, and the amount belonged to the notary, yet the bank retained the greater part of the money received. *Id.* at 270. The court observed that every person for whom such services are rendered is entitled to receive them at the same price. *Id.* at 271. The court determined that a *private contract* whereby a public officer whose compensation is fixed by statute agrees to accept for his official services something different from that provided by statute is contrary to public policy and void. *Id.* at 272.

¶ 47       We find plaintiffs' reliance on *Galpin* and *Pitsch* misplaced. *Galpin* and *Pitsch* involved two litigants who were public officers who made promises to accept less money than they were entitled to receive by statute. The courts found the promises

- 12 -

made by the public officials to accept less salary than they were entitled to receive by statute to be contrary to public policy and, therefore, illegal and unenforceable. In this case, two legislators brought lawsuits, in their individual capacity, to recover their salaries that were reduced by two public laws, one that suspended the legislators' COLAs and one that mandated that the legislators take furlough days. The public laws reducing the legislators' salaries were never found to be unconstitutional and remain in effect. Therefore, the legislators' lawsuit was not barred because they attempted to enforce an illegal and unenforceable promise but by *laches* because of their delay in bringing their lawsuit.

¶ 48    Further, *laches* is a recognized defense against claims alleging underpayment of public salaries established by law. In *Deasey v. City of Chicago*, 412 Ill. 151, 152 (1952), numerous fire and police officers filed a complaint in 1950 to recover portions of salaries allegedly due them for the years 1931 to 1939 from the City of Chicago. This court determined that lack of due diligence in pursuing their claim appeared on the face of the complaint. *Id.* at 155. The officers were aware, because of nine annual appropriation bills passed during the period, that their salaries had been lowered and that they were being consistently paid at a reduced rate, yet they did not act. *Id.* The court noted that, because the officers had year-to-year knowledge of the salary reductions, they should have sought earlier adjudication of their rights and were guilty of *laches* because they waited 11 years to file suit. *Id.* at 156; *Lashever v. Zion-Benton Township High School*, 2014 IL App (2d) 130947, ¶ 7 (determining that the defense of *laches* was available where the plaintiff, a former public-sector employee charged with violations of the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2012)) that caused her to resign, was seeking back pay after a delay of seven months from when she resigned until filing suit); *Lee v. City of Decatur*, 256 Ill. App. 3d 192, 196 (1994) (finding that *laches* applies to proceedings requesting monetary claims for back pay).

¶ 49    In *Ziemer v. City of New Orleans*, 197 So. 754, 759-60 (La. 1940), the court found that the doctrine of estoppel by *laches* was applicable to the plaintiffs' claims for back pay. For several years, from 1935 to 1939, the plaintiffs accepted the reduced pay as fixed by the board of commissioners without protest. *Id.* at 759. The court reasoned that the plaintiffs permitted the city to spend the funds for other purposes while neglecting to timely file their claims for a year or more. *Id.* The court held that to permit the plaintiffs to now recover would impose a hardship on

the city and its affairs, as the plaintiffs had not proceeded with due diligence and had permitted an unreasonable delay to elapse before asserting their claims. *Id.*

¶ 50    In *Pratts v. City of Duluth*, 289 N.W. 788, 789 (Minn. 1939), the officers and employees of a municipal corporation who knew of the city's financial straits had acquiesced in contributions from their salary to the city. The court quoted Eugene McQuillin in his work on the Law of Municipal Corporations that

> " 'it has frequently been held that the agreement of an officer or employee, in time of economic depression or other emergency, to accept a deduction, or to donate or contribute part of his salary to the city, is valid, and is not against public policy, and precludes any recovery of the amount so deducted or contributed. This has been said to be true notwithstanding a statute prohibiting reduction of salaries during the term of office.' " *Id.* at 790 (quoting 2 Eugene McQuillin, The Law of Municipal Corporations § 542, at 332 (2d rev. ed. 1939)).

The court concluded that an agreement to receive a reduction in salary upon the suggestion of the council is not an agreement contrary to public policy and constituted an estoppel. *Id.*; *Glaser v. City of Burlington*, 1 N.W. 709, 713 (Iowa 1942) (finding that, pursuant to a voluntary request, for employees who accepted the reduced pay without protest for the year in question, it would be unjust and inequitable to permit them to repudiate their agreement for the first time nearly five years after it was entered).

¶ 51    Here, plaintiffs, with the power to set their own salaries, introduced, sponsored, endorsed, voted for, publicly touted their sponsorship of, and acquiesced to the reduction in their statutory salaries. Indeed, they may have benefitted in their reelection endeavors in part, based on their championing of this position of a decrease in salary for the benefit of the public good of the State of Illinois in a time of monetary need. The public was misled by these plaintiffs when, soon after retiring from office or indicating an intention not to run for retention, plaintiffs filed this lawsuit claiming that defendant was not allowed to implement a change in their salary and that defendant must pay them the amounts of the reductions in their salaries that occurred over an eight-year period of time. See *Deasey*, 412 Ill. at 156 (finding that officers were estopped from seeking to recover back pay after entering knowingly into a reduction in salary in a time of financial depression and waiting

several years to file suit); 4 McQuillin, The Law of Municipal Corporations § 12:212 (July 2022 Update) (reasoning that an agreement, in time of economic depression, to accept a deduction in statutory salary is valid and not against public policy). Consequently, where plaintiffs are members of the body that set their own salaries and affirmatively voted to accept a reduction in those salaries, public policy does not preclude the defense of *laches*.

¶ 52 In addition, the lack of due diligence in plaintiffs' assertion of their claim is readily apparent from the record, in that it is undisputed that plaintiffs waited to file their action until eight years elapsed following enactment of the fiscal 2010 Salary Reduction Laws and all subsequent enactments. See *Tillman*, 2021 IL 126387, ¶ 26 (finding that a 16-year delay in filing a claim is unreasonable); *People ex rel. Hollie v. Chicago Park District*, 296 Ill. App. 365, 381 (1938) (determining that *laches* applies because the cause of action arose in January 1932 and suit was not commenced until four years later, and if the defendants were liable, suit could have been brought and the amounts could have been appropriated for and paid during the years of 1932, 1933, 1934, 1935, and 1936). Here, similarly, plaintiffs have by their silence for a number of years acquiesced in the reduction of their salaries. We find that plaintiffs are barred by their own conduct from asserting any rights to additional salary. Consequently, we conclude that the unreasonable delay substantiates plaintiffs' lack of due diligence, and the first element of *laches* has been met in this case.

¶ 53 2. Defendant Was Prejudiced by Plaintiffs' Unreasonable Delay

¶ 54 The second element of *laches* is whether defendant suffered prejudice because of plaintiffs' delay in filing the action. *Tillman*, 2021 IL 126387, ¶ 25; *Holland v. Richards*, 4 Ill. 2d 570, 577-78 (1955). When plaintiffs file a complaint challenging budget decisions for a fiscal year that has ended, *laches* applies because the unreasonable delay prejudices the budgeting authority. *Monson*, 394 Ill. App. 3d at 1094-95 (determining that, when the complaint was filed, the budget years had concluded and presumably the funds at issue were no longer available and that it would be highly prejudicial to require the defendant to pay these amounts long after these funds have become a part of the defendant's budget history (citing *Pace v. Regional Transportation Authority*, 346 Ill. App. 3d 125, 144 (2003))).

¶ 55    Plaintiffs' claims are for past years for which defendant had made budget decisions that included the monies saved by the Salary Reduction Laws. Defendant expended money from the legislators' salaries to pay State obligations for previous years, for the public good, while plaintiffs sat idle and did nothing. Defendant is prejudiced because she, in her official capacity as Comptroller of the State of Illinois, would be required to transfer funds already assigned elsewhere to pay salaries allegedly owed for legislators' services performed in previous years. Defendant will also suffer prejudice if relief is granted several years after the salaries became due because it will be impossible to restore the monies that existed in the budgets for those years. See *Tully*, 143 Ill. 2d at 432 (finding that courts are reluctant to come to the aid of a party who knowingly slept on rights to the detriment of the opposing party); *People ex rel. Casey v. Health & Hospitals Governing Comm'n*, 69 Ill. 2d 108, 115, (1977) (finding that it must appear that the plaintiff's unreasonable delay in asserting his rights has prejudiced and misled the defendant or caused him to pursue a course different from what he would have otherwise taken (citing *People ex rel. Griffin v. City of Chicago*, 382 Ill. 500, 504 (1943))); *Mulvey*, 292 Ill. App. at 611 (holding that an unreasonable delay and neglect of the plaintiffs in asserting what they call their unquestionable right, taken in connection with the fact that the municipality would be seriously prejudiced by such delay and neglect if their claim were sustained, make them guilty of *laches* of the grossest kind); *Lee*, 256 Ill. App. 3d at 197 (holding that prejudice to the defendant is inherent in civil service cases " 'where a detriment or inconvenience to the public will result' " (quoting *City of Chicago v. Condell*, 224 Ill. 595, 598 (1906))). Because defendant's prejudice is brought on by the fact that her budgets for legislators' salaries in previous years no longer exist and by plaintiffs' delay in filing this lawsuit, granting relief at this late stage would be detrimental to the State's budgeting authority. Accordingly, because defendant has been prejudiced by plaintiffs' unreasonable delay, the second element of *laches* has been met in this case.

¶ 56                                III. CONCLUSION

¶ 57    We conclude that under the facts here, where plaintiffs, former legislators, agreed to, acquiesced in, and voted for the Salary Reduction Laws, plaintiffs cannot now be allowed to challenge the reductions in their salaries during their previous

terms in office. We find that the defense of *laches* bars plaintiffs' *mandamus* counts for their disputed salaries. Because *laches* bars plaintiffs' *mandamus* counts, we do not need to reach the circuit court's findings that the affirmative defenses of waiver and statute of limitations lacked merit or that plaintiffs' request for cross-relief on behalf of the nonparty legislators lacked merit. Further, we vacate the circuit court's orders finding that the Legislative Salary Clause prohibits mid-term changes in legislators' salaries during their terms in office, finding the Salary Reduction Laws unconstitutional, and granting plaintiffs' *mandamus* relief in the amounts of $71,507.43 for Noland and $104,412.93 for Clayborne. Judgment is entered for the defendant.

¶ 58        Circuit court judgment reversed in part and vacated in part.

¶ 59        JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.